ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY ET AL. *v.* PUBLIC SERVICE COMMISSION OF THE STATE OF MISSOURI.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 284.   Argued March 1, 1923.—Decided March 19, 1923.

An order of a state commission requiring a railroad company to stop a designated interstate train at a city of 2,500 inhabitants for the purpose of taking on and discharging passengers, and to stop another there, on signal, for like purposes, *held*, under the circumstances, void, as an undue interference with interstate commerce. P. 371.

290 Mo. 389, reversed.

ERROR to a judgment of the Supreme Court of Missouri affirming a judgment of the State Circuit Court, which affirmed, upon a writ of review obtained by the plaintiffs in error, an order of the defendant commission requiring the stopping of certain trains. The Director General of Railroads, who was in control of the railroad under the Federal Control Act, was joined in the proceedings with the Railway Company.

*Mr. Edward T. Miller* and *Mr. William F. Evans,* for plaintiffs in error, submitted.   *Mr. Alexander P. Stewart* was also on the brief.

*Mr. Frank E. Atwood,* with whom *Mr. L. H. Breuer* was on the brief, for defendant in error.

Mr. Justice McKenna delivered the opinion of the Court.

1 Railway Company conducts an interstate railroad between Kansas City, Missouri, and Birmingham, Alabama, passing through the city of Mountain Grove, Missouri.

Upon the petition of a volunteer organization of the city, the Public Service Commission of Missouri ordered the Railway Company, (1), to provide for the stopping of its southbound train No. 105 at Mountain Grove for the purpose of taking on and discharging passengers at that point, and, (2), provide for the stopping of northbound train No. 106 at the city, on flag or signal, for the purpose of letting off passengers who board the train at points south of the Arkansas state line, and for the purpose of taking on passengers holding tickets for points beyond Springfield, Missouri,—(3), the order to be in full force and effect on and after the 16th day of June, 1919.

The order was attacked by the Railway Company on the ground that it was " in violation of Section 8 of Article I of the Constitution of the United States, in that it constituted a regulation of, interference with, and burden upon interstate commerce." The order, however, was successively affirmed by the circuit court having jurisdiction, and by the Supreme Court of the State. To the judgment of the latter this writ of error is directed.

The Supreme Court expressed the question to be " whether or not the order of the Commission as affirmed by the circuit court imposes an undue burden on interstate commerce." The court considered the question a " vital one to be determined under the facts in this case."

*Chicago, Burlington & Quincy R. R. Co.* v. *Railroad Commission of Wisconsin*, 237 U. S. 220, was adduced for the conclusion that a State may require of a railroad adequate local facilities, even to the stoppage of interstate

trains or the re-arrangement of their schedules, whether done directly by the legislature or through an administrative body.

It was decided, however, that it was for this Court to determine " the fact of local facilities," that determination being necessary to our power to consider whether the regulation of the State affected interstate commerce to an illegal extent.

The primary principle is that, although interstate commerce is outside of regulation by a State, there may be instances in which a State, in the exercise of a necessary power may affect that commerce. There is, however, no inevitable test of the instances; the facts in each must be considered. In *Gladson* v. *Minnesota,* 166 U. S. 427, it was decided that a state regulation requiring all regular passenger trains running wholly within the State to stop at stations at all county seats long enough to take on and discharge passengers invaded no constitutional right of the railroad, nor was it an infringement of interstate commerce because it was made applicable to interstate connecting trains or trains transporting mails of the United States.

In *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Illinois,* 177 U. S. 514, a statute requiring all regular passenger trains to stop a sufficient length of time at county seats to receive and let off passengers was held invalid as an interference with interstate commerce, there being local trains sufficient for the local business. The case reviewed prior cases including *Gladson* v. *Minnesota,* and declared that while there is no regulatory power in a State over interstate commerce in a proper case, the State may exercise its power to secure local facilities, although some interference with interstate commerce may result.

To the like effect is *Mississippi Railroad Commission* v. *Illinois Central R. R. Co.,* 203 U. S. 335, and *Atlantic Coast Line R. R. Co.* v. *Wharton,* 207 U. S. 328. In this

case, indeed in all of the cases, the admonitory caution is expressed " that any exercise of state authority, in whatever form manifested, which directly regulates interstate commerce, is repugnant to the interstate commerce clause of the Constitution." There is concession, however, to the requisition of reasonable facilities; necessarily, therefore, the fact of such facilities at, or their absence from, Mountain Grove must be inquired into.

Mountain Grove has a population of 2,500 persons, contains a number of banks, stores of the kind that a population of 2,500 persons would naturally demand and support, with a trade proportionate in volume and value. It has besides, a creamery, a soda water plant, a wholesale grocery business which handles dairy products, and there are shipments of live stock from the city. There is also an overall factory which employs about fifty girls, a State Fruit Experimental station and a State Poultry Experimental station.

The finding of the Commission is that " The trade territory is estimated at from thirty to fifty miles north and northeast, and twenty-five to forty miles south and southwest."

Trains Nos. 105 and 106 are through trains operated in long-distance travel. The order of the Commission requires of one of them the fixed duty of stopping; of the other, stopping on signal, its accommodation presumably being only occasional. The trains are night trains and it is difficult to see how they are necessary to the enterprise of the city, or an essentially contributing factor or adjunct to its business. We say " essentially contributing" as distinguished from some personal convenience or accommodation, which no doubt they are. It is to be borne in mind that interstate commerce and intrastate commerce have different purposes and these purposes are to be considered—the power of the Nation and the power of the States are accommodated to them and delimited by them,

and kept from interference and confusion. Our cases illustrate this and, we think, determine against the power exercised in the order under review. In other words, the order under review transcends the power of the State, the order of the Commission being of detriment to interstate commerce.

Much is made of the experimental stations, and it is said that 700 persons visit them annually who will suffer inconvenience by the discontinuance of the trains. The instance has attractive appeal but any instance of convenience has like appeal. But, as we have said, the distinction between the commerces—state and interstate—and their purposes are to be considered, and the different powers necessary to direct those purposes. Interstate commerce is concerned with the business of States,—States distant often from one another involving, necessarily, a difference in service. And such is the character of the trains in question. They are operated in long-distance traffic, are the instruments of such traffic, and it is a part of their efficiency that they are run at night. They may be a facility in some degree to Mountain Grove. It is to be remembered, however, that the city has four other through interstate passenger trains and any deficiency in their schedules or equipment can be corrected without burdening interstate commerce by stopping the trains in question. This conclusion, we think, is in accordance with our decisions.

We are compelled, therefore, to reverse the judgment and remand the cause for further proceedings not inconsistent with this opinion.

*Reversed.*