1998 OK 89

**PUBLIC SERVICE COMPANY OF OKLAHOMA, Appellee,**

v.

**FORT WORTH GRAIN EXCHANGE, Appellant.**

**No. 91,102.**

Supreme Court of Oklahoma.

Sept. 15, 1998.

Rehearing Denied Sept. 16, 1999.

Micky Walsh, Oklahoma City, For Appellant.

G. Michael Lewis, Jon E. Brightmire, Shelly L. Dalrymple, Doerner, Saunders, Daniel & Anderson, L.L.P., Tulsa, for Appellee.

HODGES, J.

¶ 1  This is an indemnity action. The underlying action resulted from injuries sustained by an employee of Appellant, Fort Worth Grain Exchange (Employer). The employee suffered electrical shock while standing on a railway car and using a metal probe to sample grain. The probe touched a high-voltage electric line owned by Appellee, Public Service Company of Oklahoma (PSO).

¶ 2  The employee sued PSO, the manufacturer of the grain probe, and the owners of the grain elevator where the accident occurred. PSO brought Employer into the action as a third-party defendant alleging that Employer was required to indemnify PSO for any liability PSO incurred from the accident. The underlying action was dismissed when the employee reached settlements with the defendants. PSO paid the injured worker $610,000.00. In a separate proceeding, Employer paid workers' compensation benefits to its injured employee. PSO then brought this indemnity action against Employer to recover the $610,000.00 paid to the injured worker.

¶ 3  The trial court entered summary judgment for PSO, despite Employer's demands for a jury trial to determine the issues of contributory negligence and assumption of the risk. Judgment was entered for the entire amount PSO paid to Employer's injured employee.

¶ 4  Employer claims the trial court erred by granting summary judgment while issues of contributory negligence and assumption of the risk remained unresolved. PSO asserts the trial court's judgment was required under the liability imposed by the "six foot" rule found at title 63, section 981, of the Oklahoma statutes and the indemnity provision found at section 984.

¶ 5  Section 981 prohibits anyone from doing anything which might place a person or an object within six feet of any electric line or conductor.[1] Section 984 provides that one who violates the "six foot" rule of section 981 "shall be liable to the owner or operator of such high voltage line or conductor ... for all liability incurred by such owner or operator as a result of any such accidental contact."[2]

¶ 6  Employer argues that because it has paid workers' compensation benefits to its injured worker, the exclusive remedy provisions[3] of the Workers' Compensation Act make it immune to any other liability. The identical argument, however, was rejected in *Travelers Insurance Co. v. L.V. French Truck Service*, 770 P.2d 551 (Okla.1988).

1.  No person, firm, corporation or association shall, individually or through an agent or employee and no person as an agent or employee of any person, firm, corporation or association, shall perform or permit any agent or employee to perform any function or activity upon any land, building, highway, or other premises, when it is possible during the performance of such activity for any person or employee engaged in performing work connected with or related to such function or activity to move to or to be placed in a position within six (6) feet of any high voltage overhead electrical line or conductor, or when it is possible for any part of any tool, equipment, machinery or material to be used by any such person or employee to be brought within six (6) feet of any such overhead high voltage line or conductor through any lateral, vertical or swinging motion during the performance of such function or activity.

Okla. Stat. tit. 63, § 981 (1991).

2.  Every person, firm, corporation, association, and every agent or employee of any such person, firm corporation, or association, who violates any of the provisions of the act, shall be guilty of a misdemeanor, and upon conviction thereof, shall be liable to a fine of not more than Five Hundred Dollars ($500.00), or imprisonment in the county jail for a term not to exceed six (6) months, or both such fine and imprisonment; and in addition thereof, if such violation results in physical or electrical contact with any overhead high voltage line or conductor, the person, firm, corporation or association violating the provisions of this act, shall be liable to the owner or operator of such high voltage line or conductor for all damage to such facilities and for all liability incurred by such owner or operator as a result of any such accidental contact.

Okla. Stat. tit. 63, § 984 (1991).

3.  Under the Workers' Compensation Act, "[e]very employer ... shall pay or provide ... compensation according to the schedules of the Workers' Compensation Act for the disability or death of an employee arising out of and in the course of employment, without regard to fault as a cause of the injury...." Okla. Stat. tit. 85, § 11 (Supp.1997). The Act goes on to provide that [t]he liability prescribed in section 11 of this title shall be exclusive and in place of all other liability of the employer and any of his employees...." *Id.* at § 12.

There, this Court specifically held that the immunity afforded an employer by the Workers' Compensation Act does not extend to liability imposed by section 984. *Id.* at 554. *See also Ring v. Public Serv. Co.*, 775 P.2d 1356, 1358 (Okla.1989).

■ ¶ 7 Employer then relies on section 987 of title 63 which states that the "six foot" rule does not apply to "the operation or maintenance of any equipment traveling or moving upon fixed rails of any railroad company subject to the Interstate Commerce Commission and/or to the Corporation Commission of the State of Oklahoma." Okla. Stat. tit. 63, § 987(c) (1991). However, the injured worker was sampling grain that merely happened to be in a railway car. His activities had nothing to do with the operation or maintenance of railroad equipment. Employer's reliance on section 987 is misplaced.

■ ¶ 8 Finally, Employer invokes article 23, section 6, of the Oklahoma Constitution which provides that "[t]he defense of contributory negligence or of assumption of the risk shall, in all cases ... whatsoever, be a question of fact and shall at all times, be left to the jury." It argues that the trial court's summary judgment against it was therefore error.

■ ¶ 9 Employer is correct in asserting that it has been deprived of its opportunity to have a jury decide the issue of the injured worker's part in the electrocution. This Court has "expressly noted that the defense of contributory negligence is available to a defendant in a [section] 984 indemnity claim ... against the employer." *Ring*, 775 P.2d at 1358 (citing *Travelers*, 770 P.2d at 556 n. 18). On remand the trial court is directed to submit issues of contributory negligence or assumption of the risk to a jury as questions of fact.

## TRIAL COURT REVERSED; CAUSE REMANDED WITH DIRECTIONS.

¶ 10 KAUGER, C.J., LAVENDER, HARGRAVE, OPALA, and WATT, JJ., concur.

1. Effective January 1, 1996, the Interstate Commerce Commission was abolished and certain functions of the Commission were transferred to

¶ 11 SUMMERS, V.C.J., SIMMS and ALMA WILSON, JJ., concur in part; dissent in part.

SUMMERS, V.C.J., concurring in part and dissenting in part, with whom SIMMS, J., joins.

¶ 1 The Court recognizes that the "six foot" rule does not apply to "the operation of any equipment traveling or moving upon fixed rails of any railroad company subject to the jurisdiction of the Interstate Commerce Commission and/or the Corporation Commission of the State of Oklahoma". 63 O.S.1991 § 987(c).[1] I respectfully dissent in part because the injury did occur in the operation of equipment traveling upon fixed rails of a railroad company subject to the regulatory jurisdiction of a federal agency and/or the Corporation Commission. The Legislature has recognized the regulatory powers of the Corporation Commission and the government of the United States, but the Court today fails to do so. The "six foot" rule in 63 O.S. § 982, does not apply because the Corporation Commission and a federal agency, as the Legislature has acknowledged, are the entities responsible for creating rules for the safe operation of railroad equipment upon fixed rails.

¶ 2 The Corporation Commission has devoted an entire chapter of the Oklahoma Administrative Code (O.A.C.) to railroad safety standards. O.A.C. 165, Ch. 32 (1996). A provision there states that "This Chapter is intended to provide safety standards for railroads within the State of Oklahoma." O.A.C. 165:31–1–1(c) (1996). A subchapter of Chapter 32 is titled "Track Clearances" and the Commission therein regulates horizontal track clearances. See O.A.C. 165:32–5–1 through 165:32–5–3 (1996), where the Commission incorporates the American Railway Engineering Association Manual, and exempts certain structures. The Commission also regulates the railroad crossing signal safety system. O.A.C. 165: . 32, subch. 3 (1996).

the Surface Transportation Board. See 49 U.S.C. §§ 701, 702 (1996).

¶3 The Corporation Commission has incorporated by reference and adopted "all of the provisions for railroad workplace safety as published and promulgated by the U.S. Department of Transportation, Federal Railroad Administration in 49 C.F.R. Part 214, Sections 214.1 through 214.117, and as later amended." O.A.C. 165:32–7–1 (1996). The Commission has also adopted and incorporated by reference "all of the provisions for track safety standards as published and promulgated by the U.S. Department of Transportation, Federal Railroad Administration in 49 C.F.R. Part 213, Sections 213.1 through 213.241, and as later amended." O.A.C. 165:32–9–1.[2] What about federal authority regulating the operation of railroad equipment?

¶4 Congress has power to regulate the safety of railroad operations and maintenance in this State. *See*, e.g., *Norfolk & Western Ry. v. Hiles*, 516 U.S. 400, 116 S.Ct. 890, 134 L.Ed.2d 34 (1996), where the Court discussed the Safety Appliance Act.[3] The Interstate Commerce Commission was initially granted the power to promulgate railroad safety regulations. This power was later transferred to the Federal Railroad Administration of the Department of Transportation. *Vaillancourt v. Illinois Central. R.R.*, 791 F.Supp. 734, 738 (N.D.Ill.1992); *Taluzek v. Illinois Central Gulf Railroad Company*, 255 Ill.App.3d 72, 626 N.E.2d 1367, 1374, 193 Ill.Dec. 816 (1993).[4] In other words, the jurisdiction once exercised by the Interstate Commerce Commission, the specific federal agency stated in 63 O.S.1991 § 987(c), was transferred to a different federal agency after § 987 was enacted in 1963.

¶5 This railroad car was stationary. The statutory exception to the "six foot" rule does not just say "moving"; it says "traveling or moving." § 987(c). Courts have long recognized that a stationary railroad car or train is nonetheless "traveling" in interstate commerce, and therefore subject to federal regulation. *St. Louis–San Francisco R. Co. v. Public Serv. Commission*, 261 U.S. 369, 43 S.Ct. 380, 67 L.Ed. 701 (1923), (requiring trains to stop was a burden on interstate commerce). See also *Southern Ry. v. United States*, 222 U.S. 20, 32 S.Ct. 2, 56 L.Ed. 72 (1911), where the Court upheld federal safety provisions applied to railroad cars traveling intrastate on a railroad line that was a highway of interstate commerce.

¶6 This approach is consistent with those opinions where the term "traveling" has been used to encompass not only the actual movement of a person or thing from one location to another, but also the stopping during that movement. *See*, e.g., *Frischhertz Electric Co. Inc. v. State Farm Mutual Auto. Ins. Co.*, 357 So.2d 1323, 1325 (La.App.1978), (although electric company truck was stopped the truck was traveling to work and required to display red flag on rear of vehicle); *Wershba v. City of Lynn*, 324 Mass. 327, 86 N.E.2d 511, 513 (1949), (a person using a highway for travel is a traveler although that person has stopped momentarily for some other purpose); *Teche Lines v. Danforth*, 195 Miss. 226, 12 So.2d 784, 787 (Miss.1943), (the right to travel includes the right to stop on the way); *Hardy v. Town of Keene*, 52 N.H. 370, 377 (1872), (a statute giving a person a cause of action when injured while traveling on a highway applies to those actually moving on the highway as well as those lingering or stopping a moment on the highway). This railroad car in our case today was traveling upon the fixed rails of a railroad company, and its use while stopped on the tracks was

---

**2.** Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. 49 U.S.C. § 20106 (1996). However, a State may create a rule related to railroad safety when the rule (1) is necessary to eliminate or reduce an essentially local safety hazard; (2) is not incompatible with a law, regulation, or order of the United States Government; and (3) does not unreasonably burden interstate commerce. *Id.* The Commission's regulatory power is subservient to federal law. See O.A.C. 165:32–1–1(d) (1996), where the Commission states that to the extent federal authority preempts Commission regulation, the federal law will control.

**3.** See Act of Mar. 2, 1893, 27 Stat. 531, recodified, as amended, 49 U.S.C.A. § 20301 et seq. (Supp.1995).

**4.** The Federal Railroad Administration enforces the federal safety statutes under delegation from the Secretary of Transportation. 49 C.F.R. Pt. 209, App. A.

subject to regulation by either the Corporation Commission or the Federal Railroad Administration.

¶ 7 The injury here occurred while the railroad cars were parked beneath the electric transmission line. The placement of the cars beneath the electric transmission lines obviously involved the operation of railroad equipment. No authority has been cited that would strip from the Corporation Commission or the Federal Railroad Administration the authority to regulate the parking of a railroad grain car underneath transmission lines when the car is designed so that its contents may be tested by a person standing on top of the car.

¶ 8 There is no doubt that the Commission and the Federal Railroad Administration have the power to protect the safety of a railroad employee testing grain in a railroad car. I must conclude that the identical activity performed by a non-railroad employee using or operating the railroad car by testing grain is also an activity that may be regulated. The act of parking the railroad cars beneath the transmission lines involves the operation of railroad equipment subject to regulation. By statute the "six foot" rule does not apply to the operation of railroad equipment upon fixed rails when the railroad is subject to the regulation of the Corporation Commission or the Federal Railroad Administration. I must respectfully dissent in part from the opinion of the Court.[5]

---

**5.** I note that the Court relies upon *Ring v. Public Service Co. of Oklahoma*, 1989 OK 84, 775 P.2d 1356. The reported version of that opinion shows in one place that I joined the dissent authored by Justice Wilson, while in a different part of that report I am shown as merely dissenting from the Court's opinion without joining the dissenting opinion. The latter is correct.