**In the Matter of the Application of the OKLAHOMA TURNPIKE AUTHORITY for the Approval of not Exceeding $650,000,000 Oklahoma Turnpike System Revenue Bonds for the Construction of Oklahoma City Outer Loop Expressway Section I, Tulsa South Bypass Section I, S.H. 33 Turnpike Section I and I–35 to I–40 Turnpike Section I and the Refunding of all of the Outstanding Oklahoma Turnpike Authority System Series A, B and C Revenue Bonds.**

No. 72173.

Supreme Court of Oklahoma.

Feb. 7, 1989.

Rehearings Denied Feb. 27, 1989.

---

William J. Robinson, Shirk, Work, Robinson & Williams, Oklahoma City, and Thomas G. Hilborne, Jr., Graydon Dean Luthey, Jr., Jones, Givens, Gotcher, Bogan & Hilborne, Tulsa, for applicant, Oklahoma Turnpike Authority.

James K. Larimore, David B. Donchin, Durbin, Larimore &. Bialick, Oklahoma City, for protestant, Oklahoma Free Roads Coalition, Inc.

Lee Cate, Norman, for protestant individuals.

HARGRAVE, Chief Justice.

The cause now before this Court is an original proceeding brought pursuant to the provisions of 69 O.S. 1981 § 1718,[1] which authorizes the Oklahoma Turnpike Authority to file an application with this Court seeking approval of bonds to be issued for the purpose of constructing and operating turnpike projects under the authority and direction of statutes found in Article 17, Title 69, of the Oklahoma statutes.

Section 1718 of Title 69 provides this Court may hold a hearing on the validity of a proposed bond issue after notice which provides all interested parties may file protests and appear to present their objections contesting the legality of the proposed issuance. Two protests to the proposed bond issue have been filed and heard by this Court. One group protesting the application of the Oklahoma Turnpike Authority is the Oklahoma Free Roads Coalition, Inc. The second group of protestants are individuals and include Senator Dick Wilkerson, Wilson Roberts, Jimmy Rogers and Joe Elles, referred to in this opinion as individual protesters.

This proceeding is authorized by 69 O.S. 1981 § 1718. That section gives the Authority the discretion to file an application for approval. This Court has determined to accept original jurisdiction in this cause.[2]

The applicant, Oklahoma Turnpike Authority, seeks approval of a revenue bond issue in the amount of Five hundred, ninety million dollars. The application states the funds so derived are to be used to refund the Oklahoma Turnpike system series A and B revenue bonds[3] and the 1971 reve-

---

1. 69 O.S. § 1718 provides:
"The Authority is authorized in its discretion to file an application with the Supreme Court of Oklahoma for the approval of any bonds to be issued hereunder, and exclusive original jurisdiction is hereby conferred upon the Supreme Court to hear and determine each such application. It shall be the duty of the Court to give such applications precedence over the other business of the Court and to consider and pass upon the applications and any protests which may be filed thereto as speedily as possible. Notice of the hearing on each application shall be given by a notice published in a newspaper of general circulation in the State that on a day named the Authority will ask the Court to hear its application and approve the bonds. Such notice shall inform all persons interested that they may file protests against the issuance of the bonds and be present at the hearing and contest the legality thereof. Such notice shall be published one (1) time not less than 10 days prior to the date named for the hearing and the hearing may be adjourned from time to time in the discretion of the Court. If the Court shall be satisfied that the bonds have been properly authorized in accordance with this Article and that when issued, they will constitute valid obli-

gations in accordance with their terms, the Court shall render its written opinion approving the bonds and shall fix the time within which a petition for rehearing may be filed. The decision of the Court shall be a judicial determination of the validity of the bonds, shall be conclusive as to the Authority, its officers and agents, and thereafter the bonds so approved and the revenues pledged to their payment shall be incontestable in any court in the State of Oklahoma."

2. See *Oklahoma Turnpike Authority v. District Court of Lincoln County,* 203 Okl. 330, 222 P.2d 514 (1950), *Atchison, T. & S.F. Ry. Co. v. Long,* 122 Okl. 86, 251 P. 486 (1926), *Jarman v. Mason,* 102 Okl. 278, 229 P. 459 (1924).

3. The series A and B revenue bonds of 1966 were issued to refund the then outstanding turnpike revenue bonds used in the construction of Section A of the Eastern Turnpike, the H.E. Bailey Turnpike, and the Turner Turnpike. In addition, these bonds were used for the purpose of constructing Section B of the Eastern Turnpike, the Muskogee Turnpike and a new administration building.

nue bonds issued for the construction of the Cimmaron Turnpike. The total amount of these refunded revenue bonds is in the range of One hundred, sixty-two million dollars. The balance of the funds derived from this proposed bond issue are to be used to pay the cost of four separate turnpike projects. The Oklahoma City outer loop expressway, Section I, will be 9.1 miles long. The Tulsa south bypass, Section I, will be 6.9 miles long. The third turnpike section to be built under this bond issue is Section I of a State Highway 33 turnpike in Mayes and Delaware Counties consisting of 32.9 miles of road. Lastly is a Section I of an I-35 to I-40 turnpike in Murray and Pontotoc Counties with 17.7 miles of road.

The original bond issue resolution was passed by the Turnpike Authority November 17, 1988. On November 22, 1988 the Authority gave notice to the Executive Bond Oversight Commission and the Legislative Bond Oversight Commission of the proposed issuance of turnpike bonds in an amount not to exceed Six hundred, fifty million dollars. Under the provisions of 62 O.S. 1987, 695.9B, these commissions have thirty days from the date of formal notification of such proposals in which to disapprove of bond issues. Other formal statutory steps in the bond issuance process were taken, beginning on December 2, 1988 with the filing of the application for bond issuance approval in this Court under 69 OS. 1981 § 1718. Hearing on the matter was set for the fourteenth day of December. The application filed in this Court was supplemented by a resolution of the Authority dated December 8, 1988 authorizing the original resolution of November 17 to be conformed to the text of the application filed in this Court the second of December. Notice of the hearing was published on December 4, 1988. Two groups appeared, as previously noted, at the hearing of December 14, and the hearing was continued until January 3, 1989. Notice of the continued hearing was also published, and in addition, the Attorney General of the State was served personally with this notice.

The Turnpike Authority passed a second resolution authorizing the issuance of revenue bonds after this Court's December 14

hearing. This amended resolution was adopted after notice on December 22. The proposed projects and bond refunding remained as before, but the total amount of the bond issue was reduced to Five hundred, ninety million dollars. This resolution approved the forms of the documentation, including bonds, an Oklahoma Department of Transportation agreement, a trust agreement, and its supplement, purchase agreement, offering agreement and escrow agreements. Also accepted by this resolution was an engineering feasibility study and revenue forecast. This resolution set a limit of 2% on underwriting discount and interest on the issue of not more than 9%, to be determined by the Chairman or Vice-Chairman of the Authority.

The previously mentioned notice to the Bond Oversight Commissions was based on the original November 17 resolution of the Authority for a bond issue for the larger figure of Six hundred, fifty million dollars. Under 62 O.S.Supp.1987 § 695.9 and § 695.8 the Bond Oversight Commissions must be notified within ten days following formal preliminary action regarding bond issuance. These Commissions review and make certain determinations. Two of these decisions are whether the proposed purposes for the bond issue are a valid public purpose and to examine the proposed debt issuance for compliance with applicable federal and state law. Section 695.9B also provides that the proposed financing is deemed approved if neither Oversight Commission disapproves of the proposal within thirty days following the filing. Both Commissions met on December 22, 1988. The Executive Oversight Commission did not achieve a quorum and took no action. The Legislative Commission met and split three to three to disapprove. Thus the Bond Oversight Commissions did not disapprove the issue. The same day, December 22, 1988, the Authority made another filing with the Bond Oversight Commissions, conforming the notice of proposed financing to the resolution adopted November 17, 1988 and the then obtaining figure of Five hundred, ninety million dollars.

The applicant, Oklahoma Turnpike Authority, submits to this Court that the following inquiries are necessary in a bond approval proceeding such as that now before the Court. First, was notice of the validation proceeding in this Court properly given? Second, does statutory authorization exist in the statutes of the state for the purpose for which the bonds are to be issued? Third, are the technical requirements of 69 O.S.Supp.1986 § 1709 met?

In addition to requesting approval of a proposed bond issue, the Authority requests additional relief from this Court which is not expressly provided for in the statute investing this Court with original jurisdiction of a validation proceeding. The Authority asks the Court to determine that under the plan submitted to the Court, the proposed bond refunding will affect a complete defeasance of the 1966 and 1971 trust agreements and at the same time determine that the plan submitted will accomplish a partial redemption of these earlier bonds prior to maturity. The Court declines to answer these supplemental inquiries inasmuch as they are not strictly encompassed within the grant of original jurisdiction made by the statutes, are not necessary to a determination of the validity of the bond financing plan, and amount to an advisory opinion in the absence of a case or controversy.

■ The Oklahoma Free Roads Coalition, Inc., contends in its brief in this Court opposing validation, that several reasons exist for denying approval of the proposed bond issue. First considered is the effect of the second resolution of the Authority approving a bond issue. This second resolution lowered the proposed bond issue from Six hundred, fifty to Five hundred, ninety million dollars, and approved a voluminous trust instrument which is submitted to this Court. This December 22, 1988 resolution was not resubmitted to the Bond Oversight Commissions. Under 62 O.S. Supp.1987 § 695.9.B.3 it is argued that this change in the resolution requires resubmission of the proposal to the Commissions. The subsection last mentioned reads:

3. In the event there is a substantial change in the nature or purpose of a proposed financing after approval by the Commissions, the prior approval shall be void and the State Governmental Entity shall be required to seek approval from the Commissions in the manner provided in paragraph I of this subsection.

It is here determined that the statute quoted requires a substantial change in "the nature or purpose of a proposed financing". The purpose in the instance of the earlier and later resolution is to construct the identical toll roads and is in the nature of selling revenue bonds to finance them. The maximum amount of the revenue bonds was lowered by the second resolution. While a substantial increase in the amount of the bond issue may well constitute the substantial change spoken to in the last quoted statute, a decrease in the funds sought for the same project is not seen as a substantial change in either nature or purpose.

■ The second proposition urged by the Free Roads Coalition Inc., is an argument of constitutionality, or the lack thereof. It is argued that the Oklahoma Turnpike Authority Act amounts to an excessive delegation of legislative authority and is therefore constitutionally invalid, under the general authority of two cited cases, *Oklahoma Farm Bureau v. State Bd. of Education*, 444 P.2d 182 (Okl.1968) and *Isaacs v. Oklahoma City*, 437 P.2d 229 (Okl.1967). The argument made is that there is no legislative standard in the Act (Art. 17 of Title 69 O.S.) which govern the criteria to be used by the Oklahoma Turnpike Authority in its determination of project feasibility.

It is a widely recognized rule that in a tripartite system of government, courts have nothing to do with the wisdom, policy or expediency of a legislative enactment. These matters are purely the subject of legislative deliberation and cognizance. Courts do not substitute their social and economic beliefs concerning the wisdom, need or appropriateness of legislation in the place of the considered judgment of a legislative body. *Ferguson v. Skrupa*, 372

U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93, 95 A.L.R.2d 1347 (1963). Thus, the true duty of the courts is to give effect to the will of the law-making power constitutionally expressed; it has nothing to do with the policy of legislation. *Barney v. Latham,* 103 U.S. 205, 26 L.Ed. 514 (1880). The Supreme Court is not authorized to consider the propriety, desirability, wisdom or practicability of legislation as a working proposition. These questions are clearly and definitely established by our fundamental law to a certainty as functions of the legislative department of government. *Application of Oklahoma Turnpike Authority,* 416 P.2d 860 at p. 879 (Okl.1966).

This Court has not heretofore explicitly stated that the delegation of the power to determine project feasibility to the Authority is, or is not a delegation of power properly exercisable solely by the legislature. Generally however, the question has been answered. In *Application of Oklahoma Turnpike Authority,* 203 Okl. 335, 221 P.2d 795 at 806 (1950), the following appears:

> ... It is wholly unnecessary to copy the act here. It of course contains many detailed provisions as to how the Authority may proceed and what it may do in the accomplishment of the overall purpose of its existence, and is given the power and delegated the authority to do and perform those things. But the Authority is not delegated any power beyond the purposes of the Act. In short, this Act delegates all power necessary to the accomplishment of the purposes of the Act, but beyond that it does not delegate to any one any of the powers of the State.... (citations omitted) The provisions of this act delegating the power to function and perform under the act does not constitute delegation of any power in violation of the Constitution.

Additionally it is to be noted that this quoted case, *Application of Oklahoma Turnpike Authority, supra,* 221 P.2d at p. 815, discussed issues raised by protestants dealing with feasibility, profit potential and utility and those factual inquiries were determined not to be material in a proceeding for approval of a bond issue. This Court has, furthermore, held that determination of feasibility and economic soundness of the project proposed rests exclusively in the discretion of the Authority. It is noted in *Application of Oklahoma Turnpike Authority,* 359 P.2d 680 at 687 (Okl.1961), that it is conceivable the Authority might err to either side of a correct determination of feasibility, but that fact merely demonstrates only that the Authority should observe the best studies and reports obtainable and then apply its official discretion. See also, *Owens v. Oklahoma Turnpike Authority,* 283 P.2d 827 at p. 830 (Okl. 1955).

■ The individual protesters' first argument in their supplemental brief also raises arguments relating to excessive delegation of authority. At issue here, as proposed by the individual contestants, is the delegation by the Turnpike Authority to its officers of power to fix interest rates, discounts and other substantive terms of the bond issue. It is contended that Title 69, Article 17, does not contain legislative authorization for officers of the Authority to do these acts, and that delegation thereof is unauthorized, citing the general rule of *Shaw v. Grumbine,* 137 Okl. 95, 278 P. 311 (1929). That case in this context referred to is not in point. There the Court stated that it was necessary that the legislature enact a law fixing the number and salary of extra employees before the auditor would have the authority to issue warrants to those employees.

The resolution adopting the bond issue now under examination fixes maximum interest rates, maturity dates and maximum discounts. Taking into account potential fluctuation in the markets handling such issues, that type of flexibility will hopefully allow the Authority to take full advantage of these fluctuations to the ultimate benefit of the state. The maximum interest rate specified is 9%. The term which the bonds are to be outstanding is specified as a maximum of forty years, with the first redemption date of not more than eleven years. The maximum underwriting charge is not to exceed 2%. The duty to finally fix

those terms rests with the Chairman or Vice–Chairman of the Authority.

In response to this argument, the Authority argues that it is a corporate body as provided in 69 O.S. 1981 § 1703, and as such must act through its agents, since it is an artificial person, citing *East Central Oklahoma Electric Coop. v. Oklahoma Gas & Electric Co.*, 505 P.2d 1324, 1327 (Okl.1973). As such, the delegation of that authority to the Chairman or Vice–Chairman of such essential features of the bond issue would appear to be most fitting. Here it is necessary to be mindful that the authority has not granted unlimited power to its agent in this respect. Authorization to bind the Turnpike Authority is denied on terms less favorable to the state than the terms set forth in the resolution. The state and Turnpike Authority would not be in a more advantageous situation had the resolution voted upon by the Commissions required issuance on the terms set forth therein. The only discretion granted in the resolution to the corporate bodies' agents is the authorization to negotiate a more advantageous arrangement than specifically approved. As a practical matter, then, it is determined that delegation of authority to set terms more advantageous to the state than that explicitly approved cannot be seen as a delegation of excessive authority. Had the resolution granted its agents the power to negotiate the issue on terms less advantageous to the state than that specifically approved, the conclusion may well have been different. As the situation is presented we see little difference here from the facts presented in *Ray v. Oklahoma Turnpike Authority*, 418 P.2d 957 (Okl. 1966), where we noted that the Authority's agent was authorized to bind the Authority on settlements up to Five thousand dollars, but was required to have settlements approved over that amount.

▮ The individual protestants also state that the trust instrument may not be approved because the trust agreement allows the I–35 to I–40 Turnpike Section I to be given to the Oklahoma Department of Transportation. The basis of this contention is the provision of 69 O.S.1981 § 1717.

Under § 1717 when all bonds are paid, or sufficient funds have been set aside to pay all bonds issued under the provisions of the act, the projects shall become part of the state highway system and thereafter be maintained free of tolls. That statute also requires all toll roads of the project to remain toll roads until all the bonds issued by the Authority have been retired, or provisions made for retirement. After a project is paid out, revenues from that project are required to be applied to projects in default and then to projects deficient in sinking funds or reserves under its trust agreement. The trust agreement found in the supplemental record of appellant, Volume I, at p. 129, discloses the trust agreements' § 713, entitled, Covenant Against Sale or Encumbrances; Exceptions contains the following language:

> (b) Notwithstanding the foregoing provisions, on or before July 31, 1989 the Authority may, *to the extent permitted by law,* sell or transfer all and not less than all of the I–35 to I–40 Turnpike Section I to the Oklahoma Department of Transportation. (emphasis added)

It remains only to be noted that such a sale or transfer prior to payout of the project is not currently authorized and indeed is prohibited by 69 O.S.1981 § 1717. Therefore it is determined that the questioned section of the trust agreement is not prohibited by the Oklahoma Turnpike Authority Enabling Act, 69 O.S.1981 Article 17, as amended, and its inclusion does not require disapproval of the bond issue.

▮ The individual protesters also state the bond issue cannot be approved as in accord with the requirements of 69 O.S. 1981 § 1728 which provides, that as far as possible, the Authority utilize the services of the Attorney General as bond counsel. Admittedly this was not done in this instance. However, this Court has before it the supplemental record of the applicant, Volume II, Exhibit I, a letter from the Attorney General of Oklahoma, Robert Henry, to the Chairman of the Oklahoma Turnpike Authority. In part, it reads:

> ... the reality of the situation is that I currently have no one on my staff who

would qualify as a recognized bond counsel on such a large issue. While the legislature has given me the authority to employ bond counsel and charge fees for his or her services, on certain bond issues, I have not been able to get an appropriation for start up costs so that I can hire this person immediately. Furthermore the legislature did not authorize me to charge fees to the Oklahoma Turnpike Authority for bond counsel.

This being the case it appears that no violation of the last mentioned statute can be demonstrated, inasmuch as the letter from the Attorney General clearly demonstrates that the utilization of the Attorney General as bond counsel for this issue is not possible at this time. The letter demonstrates that no qualified bond counsel is in his employ at this time, the position is not currently funded, and he is not authorized to charge for that service so that he could employ such an attorney and pay him out of the fees charged for that service.

█ In the initial phases of this original action, two objections were raised which subsequent proceedings have superseded and rendered moot. The first is the objection that the actions of the Oklahoma Turnpike Authority taken on December 8, 1988 are invalid by virtue of the provisions of the Oklahoma Open Meetings Act. The individual protesters contended in their brief filed December 14, with this Court, that the Oklahoma Turnpike Authority undertook two material actions toward issuance of the revenue bonds in violation of the Act, 25 O.S.Supp.1987 § 301 et seq., which render the actions taken on that date invalid. They are: (1) Appointment of a sub-committee to interview trustee banks for the issue, and (2) adoption of a resolution directing its bond counsel and general counsel to amend the November 21, 1988 resolution of the Authority to conform with the application filed in this Court.

The Authority disputes, by affidavit, the factual conclusion of the protesters that this action taken on the eighth of December was not in compliance with the Open Meetings Act. It is alleged the December 8 meeting was a special meeting under 25 O.S.Supp.1987 § 311, requiring a twenty-four hour notice of that meeting. It is alleged that notice was defective in that it was unclear to persons of ordinary intelligence. Additionally, it is contended that the notice was not posted twenty-four hours in advance and had been amended within that time. The Court need not decide, or refer for decision, these factual matters. The resolution authorizing the bond issue now before the Court was passed December 22. No issue is made but that this resolution was passed at a meeting held in compliance with the Oklahoma Open Meetings Act, and was posted at least twenty-four hours before the meeting.

It is to be noted that the legislature has retained, by the enactment of 69 O.S.1981 § 1732, the power to amend, repeal or alter the authorization for construction, routes or location of all or a portion of any project for which bonds have not yet been sold.

█ It is therefore the opinion of this Court that the proposed bond issue was legally and properly authorized. It is found and held that valid notice of this application was given, that the applicant and protestants were fully heard, and their grounds of protest considered. This Court is satisfied that the turnpike revenue bonds here involved have been properly authorized in accordance with the act, and that when issued, these bonds of the Oklahoma Turnpike Authority will constitute valid obligations according to their terms.

Therefore this Court, by this opinion, approves the issuance of the bonds as it authorized to do by 69 O.S.1981 § 1718.

The Court hereby fixes a period of ten days in which a petition for rehearing may be filed herein.

HODGES, LAVENDER, SIMMS, DOOLIN and SUMMERS, JJ., concur.

ALMA WILSON, J., concurs specially by separate opinion.

KAUGER, J., concurs specially and joins ALMA WILSON, J.

OPALA, V.C.J., not participating.

**24**

ALMA WILSON, Justice, concurring specially:

I concur in the Court's pronouncements herein because, to this date, the Legislature has failed to either promulgate a specific judicial standard of review to be implemented in matters concerning the Turnpike Authority; or to specify that the general Administrative Procedures Act shall apply. Without a definitive statutory directive, this Court by reason of stare decisis, *See, e.g., Ray v. Oklahoma Turnpike Authority*, 418 P.2d 957 (Okla.1966), is constrained to approve the extended authority which that body [the Legislature] previously delegated to the Turnpike Authority. However, provided that the Legislature does act to provide such procedural standard and/or guidelines, the application thereof may be deemed of retrospective effect in the event of an actual case or controversy involving a breach of the Authority's Trust Agreement.

I have been authorized to state that KAUGER, J. joins in the views expressed herein.

OPALA, V.C.J., not participating.

In essence, the court today is called upon to reexamine a *purely executive decision,* made within the broad parameters of legislatively-conferred *power,* whose exercise is validly effected *without* resort to an agency's *adjudicative process* to be conducted in an individual proceeding according to the course prescribed by the Oklahoma Administrative Procedures Act.[1] The constitutional as well as public-policy propriety of affording judicial review in the state's court of last resort, which can do *no* more for the litigants and for the people at large than a bond attorney's opinion, is at best questionable. For all practical purposes, the court's function today is statutorily confined to a four corners' examination of documentation compiled by the agency acting in a nonadjudicative capacity. By force of applicable law the protests are thus restricted to the facial correctness of the agency's paperwork. There is no opportunity for any meaningful forensic inquiry into the quality of the agency's decision-making that preceded its resolve to issue the bonds.

Because the task I am called upon to perform leaves me no range of judicial alternatives and hence appears as but an empty act of supererogation, I abstain from sitting in consideration of this cause.

---

1. 75 O.S.Supp.1988 §§ 250 et seq.