1999 OK 64

**Jerry R. FENT and Margaret B. Fent, husband and wife, as resident taxpayers and voters of the State of Oklahoma, Petitioners,**

v.

**OKLAHOMA CAPITOL IMPROVEMENT AUTHORITY, a body corporate and politic of the State of Oklahoma, Respondent.**

**No. 92,390.**

Supreme Court of Oklahoma.

July 13, 1999.

## ORDER

¶ 1 The opinion in the above styled and numbered cause was promulgated on June

21. *See supra* note 13.

28, 1999. The petitioners, Jerry R. Fent and Margaret B. Fent (collectively, Fent/petitioners), filed a petition for rehearing on July 2, 1999. Upon consideration of the arguments presented by the petitioners, THE COURT FINDS that the petition for rehearing should be denied.

¶2 DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THIS 13th DAY OF JULY, 1999.

¶3 HARGRAVE, V.C.J., HODGES, SIMMS, KAUGER, WATT, JJ. concur.

¶4 LAVENDER, OPALA, ALMA WILSON, JJ. dissent.

ALMA WILSON, J., with whom OPALA, J., joins, dissenting to denial of rehearing:

¶1 On rehearing, petitioners seek full consideration of the proposed financial guaranty insurance policy to be purchased by the Oklahoma Capitol Improvement Authority in order to enhance the credit of the proposed bonds. Petitioners earlier urged the invalidity of such an insurance policy. The per curiam opinion herein noted the challenge, concluding that such an insurance policy would not violate our constitutional balanced-budget provisions "so long as no term of the policy creates a binding future obligation upon the State, such as agreeing to reimburse the bond insurance company for payments made by it to some or all of the bondholders because of default ... by virtue of a lack of legislative appropriations." [1] The footnote in the per curiam opinion simply does not resolve the issue created by the proposed credit enhancement insurance policy B its effect upon the entire bond proposal B for which the petitioners seek rehearing.

¶2 To enhance the credit of the 1998 series highway bonds approved in *Application of Oklahoma Capitol Improvement Authority,* 1998 OK 25, 958 P.2d 759, the Oklahoma Capitol Improvement Authority paid a $454,000.00 premium for a financial guaranty

insurance policy issued by MBIA Insurance Corporation.[2] According to the "Tax Certificate" issued by MBIA Insurance Corporation to the Capitol Improvement Authority regarding the 1998 series highway bonds, the insurance company assumed an unconditional obligation to pay bondholders with the expectation that it would **not** be called upon to make any payment under the policy and, if it did, with the expectation that it would secure reimbursement through legal remedies.[3] Under general rules of contract law, the terms of this "Tax Certificate" may be considered as part of the entire agreement relating to the transaction.[4]

¶3 In *Application of Oklahoma Capitol Improvement Authority,* 1998 OK 25, 958 P.2d at 775, the majority of this Court explained that the proposed highway bonds would not be legally enforceable debts of the State because the bondholders would have nothing to recover if future legislative appropriations are not made and therefore the Authority does not have the monies to retire the bonds. The financial guaranty insurance policy might drastically alter this conclusion. The bondholders will have recovery under the unconditional promise of the insurer, and, the insurer expects to have the right to seek reimbursement from the State. It appears that the financial guaranty insurance policy transfers the bondholders' appropriation risk to the State by virtue of the expectation of the insurer of the 1998 series highway bonds that the burden to repay the long-term debt created by the bonds will ultimately fall on the State of Oklahoma. The transfer of the appropriation risk from the bondholders to the State was not contemplated by this Court's approval of the proposed 1998 series highway bond issue.

¶4 The state constitution prohibits the creation of debts that are enforceable in the future against the state unless the electorate has given its prior approval of such long-

1. 1999 OK 64, & 10, footnote 7.

2. Attachment to Reply Brief of Petitioners filed May 13, 1999.

3. Attachment to Reply Brief of Petitioners filed May 13, 1999.

4. *Sunrizon Homes, Inc. v. American Guaranty Investment Corp.,* 1988 OK 145, 782 P.2d 103; *Pierce Couch Hendrickson Baysinger & Green v. Freede,* 1997 OK 33, 936 P.2d 906; and 15 O.S. 1991, § 157.

term indebtedness.[5] The identity of the party B bondholder or insurer B entitled to future enforcement of the debt against the state is without constitutional import. Accordingly, rehearing should be granted for further consideration of the entire bond proposal to determine whether the credit enhancement will in fact place the future appropriation risk of the bonds squarely upon the State of Oklahoma.

¶5 The 1998 Annual Report by the Oklahoma State Bond Advisor[6] lists the State Highway Capitol Improvement Revenue Bonds, along with General Obligation Bonds, as "State of Oklahoma Tax–Supported Bonds" but categorizes the highway bonds as "Contractual Obligation Debts."[7] The Bond Advisor reports that the State of Oklahoma's Capitol Improvement Plan for fiscal years 2000–2004 identifies $2.52 billion in recommended capital improvements for projects to be funded by revenue bonds, federal funds, and dedicated state sources.[8] It seems inevitable that several more tax-supported revenue bond proposals will be submitted to this Court for approval, without prior approval by the electorate. The urgency in resolving the effect of the credit enhancement insurance policy on the instant bond proposal is obvious.

¶6 Further, the Bond Advisor reports that after the proposed highway bonds were approved by this Court,[9] the United States Government filed suit against the State of Oklahoma in the United States District Court for the Northern District of Oklahoma, alleging that the State is in default with respect to its obligation to make payments from legislative appropriations under a contract for the construction of the Sardis Reservoir.[10] According to the Bond Advisor's report, the controversy concerns the meaning and effect of the following contract language:

The parties agree that this contract is not an obligation of the State of Oklahoma for which the full faith and credit of the State of Oklahoma is pledged. Nothing herein shall be construed as legally obligating the Oklahoma Legislature to make any appropriation of funds.

The validity of the 1998 series highway bond proposal and the bond proposal herein rests upon a similar premise B that future legislatures are not obligated to make appropriations to repay the long-term bond debt. Rehearing should be granted so this Court may consider whether the outcome of the Sardis Reservoir federal litigation may have a direct impact on the appropriation risk and hence the full faith and credit of the State of Oklahoma as to the instant bond proposal.

1999 OK CR 17

---

5. Oklahoma Constitution, art. 10, §§ 23 and 25.

6. This Court may take judicial notice of the State Bond Advisor's report. 12 O.S.1991, § 2202.

7. 1998 Annual Report, Oklahoma State Bond Advisor, p.24.

8. 1998 Annual Report, Oklahoma State Bond Advisor, p.7.

9. *Application of Oklahoma Capitol Improvement Authority,* supra, decided March 20, 1998, rehearings denied April 30, 1998.

10. 1998 Annual Report, Oklahoma State Bond Advisor, p.17, reports the United States Government filed the suit on July 14, 1998, and lists the Sardis Reservoir contract, same as the 1998 series highway bonds, as a "State of Oklahoma Tax–Supported Debt" in the category of "Contractual Obligation Debts."