2009 OK 15

**Jerry FENT, as a resident taxpayer, citizen and voter of the State of Oklahoma, and all other similar persons, Petitioner,**

v.

**STATE of Oklahoma, ex rel. OKLA-HOMA CAPITOL IMPROVEMENT AUTHORITY, Respondent.**

No. 106,611.

Supreme Court of Oklahoma.

March 24, 2009.

Jerry R. Fent, Oklahoma City, OK, Pro Se Petitioner.

Lynn C. Rogers, Scott D. Boughton, Assistant Attorneys General, Oklahoma City, OK, for Respondent.

## ORDER

KAUGER, J.

Original jurisdiction is assumed. Okla. Const. art. 7, § 4. A written opinion from the Court will follow. However, today we determine that Senate Bill No. 1374, Okla. Sess. L.2008, Ch. 431, §§ 2 and 3, insofar as it pertains to the Oklahoma Conservation Commission and the River Parks Authority, is hereby declared unconstitutional and void, because the enactment violates the one-subject rule mandated by the terms of art. 5, § 57 of the Oklahoma Constitution.

1. Senate Bill No. 1374 is found at Okla. Sess. L.2008, Ch. 431 and is too long to provide in its entirety. Section 1 authorizes the Oklahoma Capital Improvement Authority (the Authority) to issue obligations for the purposes of constructing a Native American cultural center and museum for the Native American Cultural and Educational Authority. Section 2 authorizes the Authority to issue obligations for the purposes of constructing, repairing, and rehabilitating flood control dams, roadside water erosion, riparian restoration, and purchase of necessary equipment in various counties throughout the State with the assistance of local conservation districts. Section 3 authorizes the Authority to issue obligations to acquire real property, together with improvements located thereon, and personal property for purposes of constructing Zink Dam improvements, stream bank stabilization and two additional low water dams on the Arkansas River in Tulsa County. The project will be coordinated with representatives of the City of Tulsa, Tulsa County and surrounding communities, the Indian Nations Council of Governments and the United States Army Corps of Engineers. Section 4 declares the legislation immediately necessary for the preservation of the public peace, health and safety.

¶1 The first impression issues presented are: 1) whether the petitioner is precluded from challenging only a portion of Senate Bill 1374, Okla. Sess. L.2008, Ch. 431, § 2 and § 3, as unconstitutional;[1] and 2) if not, whether the specific portions of the legislation challenged in this original proceeding are unconstitutional and void because the entire original enactment violates the single subject rule mandated by the terms of art. 5, § 57, Oklahoma Constitution.[2] We hold that: 1) the petitioner is not precluded from challenging § 2 and § 3 of the bill pertaining to the Oklahoma Conservation Commission and the River Parks Authority; and 2) § 2 and § 3 are hereby declared unconstitutional and void.

## FACTS

¶2 Senate Bill 1374 of the 2008 Second Session of the 51st Legislature (SB 1374), authorizes the Oklahoma Capitol Improvement Authority (OCIA) to issue obligations to finance projects for the Native American Cultural and Educational Authority, the Oklahoma Conservation Commission, and the River Parks Authority. The petitioner, Jerry R. Fent (Fent/petitioner), challenges the validity of SB 1374 and asserts that it violates article 5, § 57 of the Oklahoma Consti-

2. The Oklahoma Constitution, art. 5, § 57 provides:

Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes; and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length: Provided, That if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof. *See also Weddington v. Henry*, 2008 OK 102, ¶1, 202 P.3d 143; *Fent v. State ex rel. Office of State Finance*, 2008 OK 2, ¶30, 184 P.3d 467; *In re Initiative Petition No. 382, State Question No. 729*, 2006 OK 45, ¶18, 142 P.3d 400; *Morgan v. Daxon*, 2001 OK 104, ¶1, 49 P.3d 687; *Campbell v. White*, 1993 OK 89, ¶20, 856 P.2d 255; *Johnson v. Walters*, 1991 OK 107, ¶22, 819 P.2d 694.

tution because it includes more than one subject. Because the bonds have already been issued for § 1 of the bill (the portion concerning the Native American Cultural and Educational Authority), Fent only seeks to have § 2 and § 3 of the bill declared unconstitutional and void.

¶ 3 Conversely, the respondent, the State of Oklahoma (respondent/State) argues that because the bonds have already issued for § 1, the petitioner should be prevented from challenging any portion of the bill. The State also contends that even if Fent were allowed to challenge it, the remainder of the bill is constitutional because the term "subject" relates to "all matters having a logical or natural connection," and the legislation concerns only one subject. We assumed original jurisdiction[3] on February 26, 2009, and issued a brief order declaring § 2 and § 3 of the Senate Bill 1374 unconstitutional.

Today, we explain the rationale behind our decision.

## I.

## ¶ 4 THE PETITIONER IS NOT PRECLUDED FROM CHALLENGING ONLY THE PORTIONS OF THE LEGISLATION WHICH CONCERN UNISSUED BONDS.

■ ¶ 5 Both the petitioner and respondent correctly note that the bonds for the first section of the bill have already been issued and that the petitioner failed to timely protest that section. The Attorney General has yet to file an executed certificate of regularity for the second and third sections of the bill. The State asserts that Fent must challenge the validity of the entire bill, not just a portion of it, and because he failed to timely protest the first section, he should be precluded from protesting the other sections.

**3.** Title 73 O.S. Supp.2002 § 160 provides:

The Oklahoma Capitol Improvement Authority may file an application with the Supreme Court of Oklahoma for the approval of bonds issued hereunder, and exclusive original jurisdiction is hereby conferred upon the Supreme Court to hear and determine each application. The court shall give the applications precedence over the other business of the court and consider and pass upon the applications and any protests which may be filed thereto as speedily as possible. Notice of the hearing on each application shall be given by notice published in a newspaper of general circulation in the state that on a day named the Authority will ask the court to hear its application and approve the bonds. The notice shall inform all persons interested that they may file protests against the issuance of the bonds and be present at the hearing and contest the legality thereof. The notice shall be published one time not less than ten (10) days prior to the date named for the hearing and the hearing may be adjourned from time to time in the discretion of the court. If the court shall be satisfied that the bonds or any portions thereof have been properly authorized in accordance with this act and the Constitution of Oklahoma, and that when issued they will constitute valid obligations in accordance with their terms, the court shall render its written opinion approving the bonds and shall fix the time within which a petition for rehearing may be filed. The decision of the court shall be a judicial determination of the validity of the bonds, shall be conclusive as to the Authority, the State of Oklahoma, its officers, agents and instrumentalities, and all other persons, and thereafter the bonds so approved and the rents and revenues pledged to their payment

shall be incontestable in any court in the State of Oklahoma.

Additionally, 73 O.S.2001 § 158 vests exclusive jurisdiction over any litigation involving the validity of any bonds issued under the act. It provides in pertinent part:

Within ten (10) days after the sale or sales of said bonds, the Attorney General of the State of Oklahoma shall examine all of the proceedings of the Authority and all resolutions passed and actions taken by it in connection with the authorization, issuance and sale of such bonds and shall, if he finds such bond proceedings and sale to be constitutional and lawful, execute his certificate and file the same of record in the office of the Secretary of State of the State of Oklahoma ...

Upon the filing of such certificate, bonds issued pursuant to proceedings so examined by the Attorney General shall be incontestable for all purposes upon the expiration of thirty (30) days from the date of such certificate, unless suit be brought in the Supreme Court of Oklahoma prior to the expiration of said period as provided herein. A facsimile of such Attorney General's certificate shall appear on each bond so issued. The Supreme Court of Oklahoma is hereby vested with exclusive jurisdiction over any litigation involving the validity of any bonds issued under this act.

Both the petitioner and respondent acknowledge that this Court has jurisdiction over this matter as it involves a determination of the validity of a bond issuance. Both parties agree that because the matter is one of great public importance as well, original jurisdiction is warranted. Pursuant to 73 O.S. Supp.2002 § 160 and 73 O.S.2001 § 158, this Court is warranted in assuming original jurisdiction.

¶ 6 Under 73 O.S. Supp.2002 § 160, this Court is given exclusive original jurisdiction to determine the validity of bond issues proposed by OCIA and any protest to those applications that may be filed.[4] The statute also provides that the Court render a written opinion if it "shall be satisfied that the bonds or any portions thereof have been properly authorized in accordance with this act and the Constitution of Oklahoma." [5]

¶ 7 In *Fent v. Oklahoma Capitol Improvement Authority,* 1999 OK 64, 984 P.2d 200, *cert. denied* 528 U.S. 1021, 120 S.Ct. 531, 145 L.Ed.2d 411, taxpayers brought an original action in this Court pursuant to § 160 challenging the constitutionality[6] of two statutes which authorized the OCIA to issue over $300 million in bonds to fund various governmental projects. In response to the challenge, the OCIA defended the constitutional attack on the statutes and it also sought approval of a portion of the bonds to be issued—two bond issues totaling $165 million. The Court in *Fent* upheld the statutes as constitutional, and we approved the validity of the portion of the bonds for which the OCIA sought approval. Like *Fent,* the petitioners here also challenge a statute which

authorizes the OCIA to issue bonds. Here, unlike *Fent,* a portion of the bonds were already issued before the statute was challenged.

¶ 8 Title 73 O.S.2001 § 158[7] sets forth limitations on contesting any OCIA bond issue. Any challenge to a bond issuance must be made within thirty days of the filing of the Attorney General's executed certificate of regularity. The statute does not address whether any bond issuance under a challenged statute would preclude a challenge to any remaining unissued bonds. The State argues that, as a matter of equity, the petitioner should not be allowed to challenge any portion of a statute after some bonds have already been issued pursuant to the statute.[8]

¶ 9 This argument is unconvincing for several reasons. First, the petitioner is not challenging the bonds which have already been issued. Second, nothing in either 73 O.S.2001 § 158 or 73 O.S. Supp.2002 § 160 suggests that the Legislature intended to forego a challenge to unissued bonds merely because some bonds have been already been issued.[9] In fact, § 160 specifically allows the Court to determine if any portion of the bonds are authorized.[10] Finally, because we

4. Title 73 O.S. Supp.2002 § 160, see note 3, supra.

5. Title 73 O.S. Supp.2002 § 160, see note 3, supra.

6. In *Fent v. Oklahoma Capitol Improvement Authority,* 1999 OK 64, 984 P.2d 200, *cert. denied* 528 U.S. 1021, 120 S.Ct. 531, 145 L.Ed.2d 411, the petitioners challenged the statutes, arguing that the bonds would create prohibited debt in violation of the Okla. Const. art. 10, § 23 and § 25 (balanced budget provisions) without a vote of the citizens. They also argued that the statutes were passed in violation of the strictures of Okla. Const. art 5, § 33.

7. Title 73 O.S.2001 § 158, see note 3, supra.

8. The State relies on equity to resist the petitioner's challenge. It insists that the petitioner should be held to have waived a challenge or should at least not be allowed to assert a challenge because he did not take issue with the statute before a portion of the bonds issued or in a more timely manner. Although it acknowledges that the Court has discretion to preclude the petitioner's challenge, the State offers no real reason to apply equitable principles here, other than its argument that some of the bonds have already issued. The State's argument that because the bond issu-

ance has already begun, the rights of the bondholders acting in good faith on their validity and enforceability would be impaired and such an impairment is prohibited by the Okla. Const. art 2, § 15 is without merit. Even if this provision were applicable, no contractual obligations are impaired by the challenge to unissued bonds. Art. 2, § 15 provides:

No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed. No conviction shall work a corruption of blood or forfeiture of estate: Provided, that this provision shall not prohibit the imposition of pecuniary penalties.

9. Title 73 O.S. Supp.2002 § 160, see note 3, supra; Title 73 O.S.2001 § 158, see note 3, supra.

10. Title 73 O.S. Supp.2002 § 160, see note 3, supra. *Beauchamp v. Oklahoma City,* 1970 OK 192, 477 P.2d 51, *cert. denied,* 400 U.S. 917, 91 S.Ct. 175, 27 L.Ed.2d 156, wherein the Court gives, in ¶ 15, an example as follows:

... In many instances, the Bond Commissioner is requested to consider the legality of only a part or a series of the bonds that have been approved at a bond election. Thereafter, he may be requested to consider another part or another ser-

previously approved a portion of the bonds to be issued in *Fent v. Oklahoma Capitol Improvement Authority,* supra, at the request of the Authority, it would be incongruous to now deny a protestant the opportunity to challenge a portion of bonds which have not been issued. Accordingly, we determine that the petitioner should not be precluded from challenging only the unissued portion of the bond statute.

## II.

¶10 **SENATE BILL NO 1374 VIOLATES THE SINGLE SUBJECT RULE OF ART. 5, § 57 OF THE OKLAHOMA CONSTITUTION.**

██ ¶11 The petitioner argues that Senate Bill 1374 violates the single subject rule of art. 5, § 57 of the Oklahoma Constitution because it addresses the separate subjects of bond issuance for: 1) the Native American Cultural and Educational Authority; 2) the

State's Oklahoma Conservation Commission; and 3) a local River Parks Authority. He seeks a writ declaring § 2 and § 3 of the new law unconstitutional. The respondent contends that the bill is constitutional because it addresses the *single* subject of approving funding of capital projects by state agencies through a common financing mechanism—revenue bonds issues by the OCIA.

¶12 The issue of whether the Legislature is constitutionally limited to one-subject legislation was settled in 1991 in *Johnson v. Walters,* 1991 OK 107, ¶22, 819 P.2d 694 and it has been decided at least five times since.[11] Under the doctrine of stare decisis,[12] and based on more than 16 years of established precedent, the answer to the petitioners' question is well settled. Nevertheless, because this is the second time in less than three months that we have had to strike legislation containing more than one unrelated subject,[13] we assumed original jurisdiction to resolve the matter by written opinion.[14]

ies of the bonds that a municipality desires to sell that had been approved at the previous election. As an example: General obligation bonds are approved at an election held in February, 1969. On June 1, 1969, the Bond Commissioner approves the issuance of a certain series of the bonds approved at the February 1969, election. Thirty days after the Bond Commissioner has acted, his determination is no longer open to challenge. Thereafter, the Bond Commissioner approves another series of bonds which were voted upon and approved at the February, 1969, bond election. Thirty days after the Bond Commissioner has acted, his determination is no longer open to challenge. . . .
*See also, Dean v. Wes Watkins Area Vocational–Technical School District, No. 25,* 1989 OK 141, 782 P.2d 116 [Taxpayers concerned with legality of bond elections may bring suit either before bond commissioner approves issuance of bonds or within 30 days of bond commissioner's approval.].

11. *Weddington v. Henry,* see note 2, supra; *Fent v. State ex rel. Office of State Finance,* see note 2, supra; *In re Initiative Petition No. 382, State Question No. 729,* see note 2, supra; *Morgan v. Daxon,* see note 2, supra; *Campbell v. White,* see note 2, supra.

12. Stare decisis means to abide by decided cases, and it serves to take the capricious element out of the law and gives it stability. *Rodgers v. Higgins,* 1993 OK 45, ¶28, 871 P.2d 398.

13. On November 24, 2008, in *Weddington v. Henry,* see note 2, supra, in a three sentence order, we found Senate Bill 1708 to be unconstitutional

pursuant to art. 5, § 57 of the Oklahoma Constitution.

14. The Oklahoma Constitution, art 7, § 4 provides:

The appellate jurisdiction of the Supreme Court shall be co-extensive with the State and shall extend to all cases at law and in equity; except that the Court of Criminal Appeals shall have exclusive appellate jurisdiction in criminal cases until otherwise provided by statute and in the event there is any conflict as to jurisdiction, the Supreme Court shall determine which court has jurisdiction and such determination shall be final. The original jurisdiction of the Supreme Court shall extend to a general superintendent control over all inferior courts and all Agencies, Commissions and Boards created by law. The Supreme Court, Court of Criminal Appeals, in criminal matters and all other appellate courts shall have power to issue, hear and determine writs of habeas corpus, mandamus, quo warranto, certiorari, prohibition and such other remedial writs as may be provided by law and may exercise such other and further jurisdiction as may be conferred by statute. Each of the Justices or Judges shall have power to issue writs of habeas corpus to any part of the State upon petition by or on behalf of any person held in actual custody and make such writs returnable before himself, or before the Supreme Court, other Appellate Courts, or before any District Court, or judge thereof in the State. The appellate and the original jurisdiction of the Supreme Court and all other appellate courts shall be invoked in the manner provided by law.

¶ 13 In *Campbell v. White*, 1993 OK 89, ¶¶ 19–20, 856 P.2d 255, we discussed the single subject rule as it pertained to art. 5, § 56 of the Oklahoma Constitution. We said:

> ... We are not free to so expand the meaning of constitutional provisions through the post-hoc application of an inconsistent functionality test. To do so would allow the Constitution to be read as permitting that which it was clearly meant to prohibit. The clear language of art. 5, § 56 requires that all special appropriations bills embrace a single subject. Because Senate Bill 142 and Senate Bill 725 contain a multiplicity of provisions unrelated to a common theme or purpose, they are unconstitutional.

This is the is the second time in less than two years that this Court has been called upon to determine whether legislatively enacted laws are unconstitutional for violation of the single-subject mandate ... We trust a third opinion will not be necessary. Our consideration for the practical operations of government should not be understood to be a shield for the continued enactment of unconstitutional laws. Although we are sympathetic with the time constraints the Legislature faces in session, this Court is bound to uphold the Constitution—we are prepared to do so.

¶ 14 Art. 5, § 57 of the Oklahoma Constitution provides: "Every act of the Legislature shall express but one subject, which shall be clearly expressed in its title...." This provision is commonly known as the "single subject rule." The purposes of the single subject rule are: 1) to ensure that the legislators or voters of Oklahoma are adequately notified of the potential effect of the legislation;[15] and 2) to prevent "logrolling,"[16] the practice of assuring the passage of a law by creating one choice[17] in which a legislator or voter is forced to assent to an unfavorable provision to secure passage of a favorable one, or conversely, forced to vote against a favorable provision to ensure that an unfavorable provision is not enacted.[18] The single subject rule applies to legislative acts promulgated through the initiative process, as well as those promulgated through the Legislature.[19]

¶ 15 These purposes have been recognized by the Court since statehood. In *In re County Commissioners of Counties Comprising Seventh Judicial Dist.*, 1908 OK 207, 98 P. 557, the Court noted in ¶¶ 4–5 that:

> ... Each subject brought into the deliberation of the legislative department of the government is to be considered and voted on singly, without having associated with it any other measure to give it strength. Experience had shown that measures having no common purpose, and each wanting

15. *Edmondson v. Pearce*, 2004 OK 23, ¶ 43, 91 P.3d 605, *cert. denied*, 543 U.S. 987, 125 S.Ct. 495, 160 L.Ed.2d 371(2004); *In re Initiative Petition No. 347, State Question No. 639*, 1991 OK 55, ¶ 15, 813 P.2d 1019; *In re Initiative Petition No. 314*, 1980 OK 174, ¶ 59, 625 P.2d 595; *Gibson Prods. Co. of Tulsa v. Murphy*, 1940 OK 100, ¶ 9, 100 P.2d 453.

16. *In re Initiative Petition No. 382, State Question No. 729*, see note 2, supra at ¶ 8. The etymology of the term "logrolling" probably evokes the picture of a pioneer clearing a field. The landowner would enlist a neighbor to help roll a fallen tree too heavy to be moved by one person into a pile for burning. *See* Black's Law Dictionary, "logrolling" (8th ed.2004); The American Heritage Dictionary of The English Language, "logrolling" (4th ed.2000).

17. *In re Initiative Petition No. 382, State Question No. 729*, see note 2 supra at ¶ 8. The choice, often known as "Hobson's choice" is an apparently free choice that offers no real alternative; in the parlance of our times, a "take it or leave it." The phrase finds its origin in the practice of an English livery stable proprietor named Thomas Hobson (1544?–1630), who required that his customers choose the horse nearest the stable door or none at all. *See,* The American Heritage Dictionary of The English Language, "Hobson's choice" (4th ed.2000).

18. *Edmondson v. Pearce*, see note 15, supra at ¶ 44; *In re Initiative Petition No. 360, State Question No. 662*, 1994 OK 97, ¶¶ 17–18, 879 P.2d 810; *Johnson v. Walters*, see note 2, supra; *In re Initiative Petition No. 314*, see note 15, supra at ¶ 59, ¶ 63. The rule also exists to prevent the Legislature from "veto-proofing" a bill, or attaching a rider to a bill to prevent the Governor from having any real opportunity to veto the measure. *See Johnson v. Walters*, see note 2, supra.

19. *Edmondson v. Pearce*, see note 15, supra at ¶ 44; *In re Initiative Petition No. 347*, see note 15, supra at ¶ 13.

sufficient support on its merits to secure its enactment, have been carried through legislative bodies and enacted into laws. when neither measure could command or merit the approval of a majority of that body.

The other abuse against which this provision was levied was to prevent matters foreign to the main objects of a bill from finding their way into such enactment surreptitiously. Substantially such a provision is found in many of the state Constitutions, and, as is usual in such cases, judges have differed in their interpretation of the same. The best-considered cases, however, appear to have established the following propositions: That the clause is mandatory; that its requirements are not to be exactingly enforced, or in such a technical manner as to cripple legislation; that the title of a bill may be very general, and need not contain an abstract of the contents of the bill, or specify every clause therein, it being sufficient if they are all referable and cognate to the subject expressed. Everything which is necessary to make a complete enactment, or to result as a complement of the thought therein contained is included in and authorized by such title expressed in general terms ...

¶ 16 The clear language of art. 5, § 57 of the Oklahoma Constitution requires that all Legislative acts shall embrace but one subject. This Court interprets the single subject rule using a "germaneness" test: if the provisions are germane, relative, and cognate to a readily apparent common theme and purpose, the provisions are related to a single subject.[20] We explained the germaneness test in our recent decision In re Initiative Petition No. 382, State Question No. 729, 2006 OK 45, ¶ 14, 142 P.3d 400, wherein we said:

While a passing glance at these cases may seem to bolster the proponent's conception of an expansive germaneness test, a reader of these cases must be mindful of the instruction of our decision in In re Initiative Petition No. 314, 1980 OK 174, 625 P.2d 595. There we explained that seeming inconsistences in our single subject rule jurisprudence melt away when one understands that each case was decided by determining whether the purposes behind the rule were offended. Whether we explicitly stated it or not, the issue is not how similar or "related" any two provisions in a proposed law are, or whether one can articulate some rational connection between the provisions of a proposed law, but whether it appears that either the proposal is misleading or provisions in the proposal are so unrelated that many of those voting on the law would be faced with an unpalatable all-or-nothing choice.

¶ 17 The respondent cites to six cases which involved legislation that, according to the respondent, contained multiple "bond" subjects which were approved by the Court.[21] While it is true that the cases relied upon by the respondent all involve Court approval of bond issues, none of them involved a constitutional challenge alleging that they violated the single subject rule. Consequently, these cases are distinguishable and are not dispositive of this cause.[22]

**20.** *Edmondson v. Pearce*, see note 15, supra at ¶ 44; *In re Initiative Petition No. 363, State Question No. 672*, 1996 OK 122, ¶¶ 15–16, 927 P.2d 558; *Campbell v. White*, see note 2, supra; *Rupe v. Shaw*, 1955 OK 223, ¶ 11, 286 P.2d 1094.

**21.** These cases are: *In the Matter of Application of Oklahoma Development Finance Authority*, 2004 OK 26, 89 P.3d 1075; *In the Matter of Application of Oklahoma Department of Transportation*, 2003 OK 105, 82 P.3d 1000; *Fent v. Oklahoma Capitol Improvement Authority*, 1999 OK 64, 984 P.2d 200, *cert. denied* 528 U.S. 1021, 120 S.Ct. 531, 145 L.Ed.2d 411 (1999); *In the Matter of Application of Oklahoma Capitol Improvement Authority*, 1998 OK 25, 958 P.2d 759, *cert. denied* 525 U.S. 874, 119 S.Ct. 174, 142 L.Ed.2d 142 (1998); *In the Matter of Oklahoma*

*Turnpike Authority*, 1989 OK 21, 770 P.2d 16; and *Application of the Oklahoma Capitol Improvement Authority*, 1960 OK 207, 355 P.2d 1028.

**22.** *In the Matter of Application of Oklahoma Development Finance Authority*, see note 21, supra, involved the approval of industrial development taxable revenue bonds pursuant to the Oklahoma Quality Jobs Incentive Leverage Act to provide funds to pay or reimburse tire corporations for a portion of the costs of expanding and re-tooling their existing manufacturing plants in Oklahoma. The petitioner objected that the Council of Bond Oversight's approval of bonds violated the separation of powers doctrine. The petitioner also objected that: 1) the bonds were not for a public

¶ 18 Our recent cases in which we addressed multi-subject legislation provide guidance. In *Weddington v. Henry*, 2008 OK 102, ¶ 1, 202 P.3d 143, we struck down a nearly 300 page statute which provided for amendments, modifications, and adoptions of various uniform laws. The State argued that because the statute involved the single subject of "uniform laws," it was constitutional. We disagreed, and in a two sentence order, declared the entire measure unconstitutional and void as facially contrary to the Okla. Const. art. 5, § 57. Like *Weddington*, the fact that today's measure involves the subject of "bond issuances" does not make it a one subject statute.

¶ 19 *In re Initiative Petition No. 382, State Question No. 729*, 2006 OK 45, ¶ 7, 142 P.3d 400, we considered the issue of whether Initiative Petition No. 382 violated the single subject rule because it involved the subjects of: 1) limiting public bodies' power to take private property by public domain; and 2) requiring public bodies to pay landowners compensation when property values are adversely effected by zoning. Although the proponents of the measure argued that it addressed only one subject—regulating the government's power to take and damage private property—we determined that the measure was unconstitutional because it involved two separate subjects. The proponents in *Initiative Petition No. 382*, like the respondents here, would have had us apply a broad expansive theme approach to the one-subject requirement.[23]

¶ 20 However, in *Initiative Petition No. 382* we expressly rejected any broad, expansive, approach that may have been taken in prior cases and we do so again today.[24] In *Fent v. State ex rel Office of State Finance*, 2008 OK 2, ¶ 23, 184 P.3d 467 we said:

> *Campbell v. White* rejected the broad, expansive theme approach to the one-subject requirement. 1993 OK 89, at ¶ 8, 856 P.2d at 258. *Campbell* recognized that legislation satisfies the one-subject requirement in art. V, § 57 if the provisions are germane, relative, and cognate to one another, citing *Black v. Oklahoma Funding Bd.*, 1943 OK [270, 193 Okla. 1], 140 P.2d 740, 743. *Campbell* affirmed the "unity-of-subject" germaneness test to determine if there is "unity-of-subject" in all provisions in the legislation challenged under the one-subject requirement in art. V, § 56. 1993 OK 89, at ¶ 12, 856 P.2d at 260. We reject the State Treasurer's argument for a broad, expansive theme approach to the one-subject requirement. We adhere to our prior cases holding germaneness to be the standard for determining violation of the one-subject requirement in art. V, §§ 56 and 57.

¶ 21 In *Campbell v. White*, 1993 OK 89, ¶ 20, 856 P.2d 255, we declared legislation argued to have involved "cultural entities" to be violative of the single subject rule because

---

purpose and they fell within the prohibitions against granting exclusive rights or privileges to private corporations; 2) the employee withholding taxes were 'trust funds' that cannot be used for other purposes; and 3) the bonds were not revenue bonds and therefore created a debt. *In the Matter of Application of Oklahoma Department of Transportation*, see note 21, supra, involved the issues of whether the statutorily-prescribed method of appointment of members to the Council of Bond Oversight contravened the separation of powers provision in the Oklahoma Constitution and whether the proposed notes impermissibly created a state debt. *Fent v. Oklahoma Capitol Improvement Authority*, see note 21, supra, involved whether the statutes created an impermissible debt and whether they were revenue bills controlled by the Okla. Const. art 5, § 33. *In the Matter of Application of Oklahoma Capitol Improvement Authority*, see note 21, supra, involved whether the proposed bonds were debts for purposes of the budget balancing amendments, election requirements, and debt limitations of the Oklahoma Constitution. *In the Matter of Oklahoma Turnpike Authority*, see note 21, supra, involved a challenge that the Oklahoma Turnpike Authority Act amounted to an excessive delegation of legislation authority. *Application of the Oklahoma Capitol Improvement Authority*, see note 21, supra, involved the question of whether the bonds created a state debt in violation of the Oklahoma Constitution.

**23.** The respondent refers us to previous cases as well as Court of Criminal Appeals cases to support the argument that the term "subject" should be given a broad extended meaning. *See, e.g., Griffin et al v. Thomas*, 1922 OK 134, ¶ 17, 206 P. 604; *Kemp v. State*, 1926 OK CR 301, 248 P. 1116, *Gilbert Cent. Corp. v. State*, 1986 OK 6, ¶¶ 55–56, 716 P.2d 654.

**24.** *In re Initiative Petition No. 382, State Question No. 729*, see note 2, supra at ¶¶ 13–14.

the bill included funding to cultural entities but also included such things as reappropriation of funds from the Department of Tourism and Recreation to provide a state match to federal Bureau of Reclamation Program Funds; reappropriated funds relating to the department of an industrial airpark economic study; restricting the closing of state parks; and providing an internship program for the Board of Regents. The subjects at issue here are as unrelated as the subjects were in *Campbell.*

¶ 22 Perhaps the most strikingly similar cause is the case of *Johnson v. Walters,* 1991 OK 107, ¶ 22, 819 P.2d 694, wherein the challenged legislation involved two sections which empowered the Legislature to allocate space in the State Capital Building and to relocate various state officials, and a third section which authorized the sale of surplus water from Sardis Reservoir. While *Johnson* involved the issue of the veto power of the Governor, we recognized that the Governor was bound by the one-subject rule and that the legislature clearly violated it. Here the legislation involves three separate and unrelated entities: a Cultural Center, a Conservation Commission, and a River Parks Authority. If it was clear in *Johnson* that the legislation facially violated the constitution, so must it be so today.

¶ 23 The state contends that the provisions are related because they involve water or some type of flood control. This argument is unconvincing. The statute involves three separate bond issues and three separate entities with three separate purposes and for this constitutional analysis, we must examine the entire statute as it was originally enacted. The bonds for each entity are issued separately. Because they are so unrelated, it would appear that this is the quintessential logrolling example—something for Oklahoma City, something for Tulsa, and something for the rest of the state. The provisions in the statute are so unrelated that those voting on the law would without a doubt be faced with an unpalatable all-or-nothing choice.

## CONCLUSION

¶ 24 Does every bond issuance measure have to be brought individually, by separate statutes? Probably not, but those which are brought together within one statute must pass constitutional muster and at the very least have some semblance of relation to each other and must not be misleading or provide the voter or legislator with an all-or-nothing choice. Because § 2 and § 3 of Senate Bill No. 1374, Okla. Sess. L.2008, Ch. 431 fail to meet the germaneness test, these sections are unconstitutional and void pursuant to Okla. Const. art. 5, § 57. However, § 1 of the bill remains intact because it was not challenged by this proceeding.

**ORIGINAL JURISDICTION ASSUMED; DECLARATORY RELIEF GRANTED.**

EDMONDSON, C.J., TAYLOR, V.C.J., HARGRAVE, KAUGER, WATT, COLBERT, JJ., concur.

WINCHESTER, J., concurs in result.

REIF, J., dissents.

OPALA, J., concurs in judgment but not in the court's pronouncement