**G. H. RAY, Plaintiff in Error,**

v.

**OKLAHOMA TURNPIKE AUTHORITY, Defendant in Error.**

**No. 41214.**

Supreme Court of Oklahoma.

Oct. 4, 1966.

Rehearing Denied Nov. 28, 1966.

Application for Leave to File Second Petition for Rehearing Denied Dec. 20, 1966.

Reford Bond, Jay R. Bond, Thomas P. Hester, Oklahoma City, for plaintiff in error.

Douglas McKeever, McKeever, Glasser, McKeever & Conrad, Enid, for defendant in error.

HALLEY, Chief Justice.

This is an action on a cross petition to enforce the terms and conditions of an agreement and release executed and delivered by G. H. Ray, plaintiff in error, to an agent of the Oklahoma Turnpike Authority, defendant in error. Ray was the defendant below, and the Oklahoma Turnpike Authority was the plaintiff. The parties will be here referred to by their trial court designation.

The controversy now before us evolved out of a condemnation proceeding in the District Court of Grady County, Oklahoma, wherein the plaintiff sought to condemn a certain oil and gas lease owned by the defendant for the purpose of constructing thereon a portion of the Southwestern Turnpike. Prior to the actual filing of the condemnation petition by plaintiff, negotiations pertaining to a settlement of the matter were carried on between the defendant Ray, and his attorney, and one Don Welch, an attorney for the plaintiff, and as a result of these negotiations, the following Agreement and Release was executed by the defendant and delivered to Welch on June 25th, 1962. It is as follows:

"AGREEMENT AND RELEASE"

"The undersigned, G. H. Ray of Cement, Grady County, Oklahoma, for and in consideration of the total sum of $45,000.00 to be paid to the undersigned by the Oklahoma Turnpike Authority does hereby covenant, contract and agree as follows:

"1. All claims for compensation or damages of whatsoever nature and character and whether presently known or otherwise in connection with the establishing of the Southwestern Turnpike project over the following described real estate located in Grady County, Oklahoma, to wit:

The Southwest Quarter in Section 9, Township 5 North, Range 9 West of the I. M.,

is concerned are hereby released and settled.

"2. Specifically this agreement covers an existing hole previously drilled for oil and gas by the undersigned which is located upon the above described real estate; it is understood that this release and agreement covers not only the ownership of said dry hole but covers any damage which might result by reason of the undersigned being unable to use said dry hole for salt water disposal or to use said well for secondary recovery and further includes any damage that might be done the undersigned should there remain any oil in place unrecoverable because of the location of the Turnpike project over the dry hole described herein.

"3. It is specifically understood and agreed that for the consideration above described the undersigned agrees without delay to reduce the top of the surface casing now in said dry hole to a point at least three feet below the surface of the ground; in this connection the undersigned agrees that said well has been plugged according to the applicable rules and regulations of the Corporation Commission of the State of Oklahoma and should it be discovered otherwise, then the undersigned will immediately replug said well in accordance with said rules and regulations.

"4. The undersigned is also the owner of one or more gathering lines now used for gathering and transporting oil and gas across said real estate; the undersigned agrees that he will immediately contact Craig and Keithline, Section Engineers at 816 East 6th Street, Tulsa, Oklahoma, and will obtain from said engineers instructions for the type, method and loca-

tion for relocation of such gathering lines so that such lines will be laid beneath the said turnpike project; the entire expense of such relocation shall be borne by the undersigned; the expense mentioned in the preceding includes cost of materials, labor or any other expense incurred of whatsoever nature or character, including any expense for trucking of oil during disconnected periods.

"5. It is understood that in connection with the lowering of the top of the plug on said well, and in connection with the relocation of said lines, time is of the essence to the Oklahoma Turnpike Authority and the undersigned agrees to lower said plug within seven (7) days from the date of this agreement, and it is further understood that the undersigned will contact the above named Section Engineers on or before July 2, 1962 concerning the relocation of said lines above mentioned and will comply with any reasonable request made by said engineers as to expediting the relocation thereof.

"6. There is attached and made a part of this agreement a plat which more particularly describes the turnpike right-of-way covered by this agreement, except that this agreement is not limited to damages caused by said right-of-way insofar as the oil and gas leasehold estate owned by the undersigned is concerned.

"Executed and delivered this 25th day of June, 1962.

"s/ G. H. Ray
G. H. Ray

"Acknowledgment

"State of Oklahoma }
"County of Grady } ss:

"Before me, the undersigned, a Notary Public, in and for said County and State, on this 25th day of June, 1962, personally appeared G. H. Ray to me known to be the identical person who executed the within and foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act and

deed for the uses and purposes therein set forth.

My Commission expires March 29, 1964.

"s/ Doris M. Wood
Notary Public.

"I have read the above and foregoing and agree to the conditions and terms thereof.

"s/ Reford Bond Jr.
Reford Bond Jr.
Attorney for G. H. Ray"

The above agreement was prepared by Welch, and those things required by the agreement to be done by the defendant were accomplished in the time set forth by the agreement. Welch, as was the normal procedure, forwarded the agreement to the Trustee for the Turnpike Authority on June 26, 1962, along with a certificate from the Trustee's Appraiser which stated that in the opinion of the Appraiser, the settlement was beneficial to the Authority.

Subsequently, a requisition for a voucher, authorizing the Trustee to issue a check to the defendant for the sum of $45,000.00 was signed by the Chairman of the Turnpike Authority, the Treasurer of the Authority and the Chief Engineer of the Authority. However, H. E. Bailey, Consulting Engineer for the Turnpike Authority, refused to approve the requisition for payment, and on July 23, 1962, plaintiff instituted its condemnation action.

Defendant filed its answer and cross-petition on August 2, 1962, alleging the execution of the Agreement and Release, above set out. Plaintiff, in its response thereto, alleged that no settlement could be made without the approval of the Consulting Engineer of the Turnpike Authority, and that therefore, the Agreement and Release was not binding on the Authority, absent such approval by the Consulting Engineer. Commissioners were duly appointed by the trial court, their report was made, and they awarded the defendant the sum of $22,000.-00, which was deposited into court, and withdrawn by the defendant. The issues raised by the defendant's cross-petition was

tried by the court, and a judgment was entered by the court adverse to the position of the defendant.

The trial court held that by virtue of Section 702 of the Trust Agreement, that plaintiff and its agents were without power or authority to enter into any settlement agreement involving more than Five Thousand Dollars ($5,000.00) without the approval of the Consulting Engineer of the Oklahoma Turnpike Authority, and that since his approval was not given to the Agreement and Release in question, neither party was bound thereby, and said Agreement and Release was of no effect. A motion for a new trial was filed and overruled by the trial court and defendant perfected his appeal here.

Defendant asserts two propositions for reversal. His first proposition is to the effect that the trust agreement executed by the Oklahoma Turnpike Authority in connection with the financing of the Southwestern Turnpike is neither a source of nor a limitation on the powers of the Oklahoma Turnpike Authority in its contractual relations with the public, nor does it impart constructive notice of any of the covenants contained therein.

In support thereof, defendant cites a portion of Title 69, O.S. 1961, Section 660, which states:

" * * * Such trust agreement or resolution providing for the issuance of such bonds may contain such provisions for protecting and enforcing the rights and remedies of the bondholders as may be reasonable and proper and not in violation of the law, including covenants setting forth the duties of the Authority in relation to the acquisition of property and the construction, improvement, maintenance, repair, operation and insurance of the Turnpike project in connection with which such bonds shall have been authorized."

Defendant argues therefrom that the trust agreement entered into pursuant to the above statute is a contract between the Oklahoma Turnpike Authority and the Trustee for the benefit of the bondholders,[1] and that one dealing with the Oklahoma Turnpike Authority is not bound or required to inquire into limitations imposed on the statutory powers of the Oklahoma Turnpike Authority by private contracts (the trust agreement) entered into for the benefit of its bondholders. Defendant further contends that he had no knowledge or notice of the section of the trust agreement which required the approval of the Consulting Engineer for expenditures of money in excess of $5,000.00. That he was not advised of this by Welch, nor is there anything in the record to indicate that the defendant had, or should have had notice of the above limitation.

Plaintiff counters this argument by showing that the Oklahoma Turnpike Enabling Act, as amended, Title 69, O.S. 1961, Sec. 651–687, provides for the judicial determination of the bonds and the trust fund. That pursuant to such statutory direction, an application was made to this court for such a determination, and that this court, in the case of the Application of Oklahoma Turnpike Authority, Okl., 359 P.2d 680, held that the official acts and proceedings of the Oklahoma Turnpike Authority respecting the authorization and approval of the location, construction and financing of the Southwestern Turnpike Project and the authorization and issuance of bonds and the authorization and issuance of the trust agreement, and the provisions of the trust agreement were valid and were in conformity with the Enabling Act and other applicable law.

Plaintiff further asserts that because of the provisions of Title 69, O.S. 1961, Section 668, which, among other things, provided for notice of the hearing on the application to be published in a newspaper of general circulation in the state for a period of at least ten days before the hearing was to be held, that this constituted notice to anyone of all of the provisions of the trust agreement, and that therefore, defendant did, at the time of his negotiations with Welch, have actual notice of the

provisions of the Trust Agreement with respect to the limitation placed upon the expenditure of money from the Construction Fund, and that he knew that the Agreement and Release had to be approved by the Consulting Engineer before the payment of the $45,000.00 could be made.

A careful reading of our opinion in the case cited, supra, reveals that although no direct mention was made therein of Section 702 of the Trust Agreement, there can be no doubt that we approved, as legal and binding, all of the terms and conditions set forth in the Trust Agreement, including Section 702 thereof.

■ Therefore, in considering the arguments advanced by both plaintiff and defendant in connection with defendant's first proposition, we are constrained to find and do find that defendant's first proposition is not sound, and that by virtue of the statutory enactments, above set out, and our decision in the Application of Oklahoma Turnpike Authority case, supra, that anyone dealing with the Oklahoma Turnpike Authority is deemed to have had notice of the terms, covenants and conditions set forth in the trust agreement, and that therefore, defendant should have known of the right of the Consulting Engineer of the Oklahoma Turnpike Authority to approve or disapprove the proposed settlement.

■ Defendant, for his second proposition states that the Oklahoma Turnpike Authority is bound by a settlement agreement, made by its agent, clothed with apparent authority to negotiate such a settlement. Defendant asserts that by statute, the Authority was authorized to acquire right-of-way by purchase, and to appoint agents and attorneys to carry out its functions. With this point we can have no argument. It is clear that the Authority did have the power to acquire right-of-way for the construction of the Southwestern Turnpike, and it further had the power, and did exercise the power, of employing agents and attorneys to carry out the land acquisition necessary for such construction. Welch was one of such attorneys.

However, it is clear from the evidence herein, that although Welch had full power to negotiate with property owners for the acquisition of their property, his authority did not extend to the binding of the Authority with respect to amounts of payment in excess of $5,000.00. In cases involving sums in excess of $5,000.00 Welch was obliged, as he did here, to follow the regularly established administrative procedure in getting the transaction approved. This required the approval of a requisition, the preparation of the necessary vouchers, and the final issuance of a check. It appears from the evidence that both defendant and his attorney were advised that a period of time would be necessary before the check would be issued to the defendant. The evidence showed that Welch followed the same procedure here, in his dealings with the defendant, that he had followed in similar negotiations, and that always before, his recommendations had been followed by the Consulting Engineer.

After careful consideration of the facts and law, we hold that Welch did not have the authority to bind the Oklahoma Turnpike Authority, and that the trial court was correct in his disposition of the case.

Judgment affirmed.

JACKSON, V. C. J., and DAVISON, WILLIAMS and BERRY, JJ., concur.

BLACKBIRD, IRWIN, HODGES and LAVENDER, JJ., dissent.

IRWIN, Justice: (dissenting).

The trial court's judgment is based on a finding that the Oklahoma Turnpike Authority and its agents were without power or authority to enter into any settlement agreement involving more than Five Thousand Dollars ($5,000.00) without the approval of the consulting engineer and trustee for Oklahoma Turnpike Authority, as set forth in Sec. 702 of the Trust Agreement which provides in part as follows:

"The Authority further covenants that before entering into any contract or in-

curring any obligation exceeding Five Thousand Dollars ($5,000.00) in amount will become a charge against the Construction Fund it will secure the approval of the Consulting Engineers of such contract or the incurring of such obligation * * *."

In my opinion it was not necessary to secure the approval of the Consulting Engineer in the instant proceeding and I must dissent to the opinion promulgated by a majority of my associates.

Title 69 O.S. 1961, Sec. 657, provides:

"The Authority is hereby authorized and empowered to acquire by purchase, or condemnation lands or such interest therein *as in its discretion may be necessary* for the purpose of establishing, constructing, maintaining and operating turnpike projects or relocation thereof, and facilities necessary and incident thereto, * * * *upon such terms and at such price as may be considered by it to be reasonable and can be agreed upon between the Authority and the owner thereof,* and to take title thereto in the name of the Authority * * *." (emphasis supplied)

In my opinion, the above section is clear and unambiguous and applying the above provision to the facts presented here, the Authority, in its discretion, could acquire defendant's property under such terms and at such price as may be considered by it to be reasonable and could be agreed upon between the Authority and defendant. However, the basis for the trial court's judgment is to the effect that the Authority could not do so since the amount exceeded $5,000.00 and it would be necessary to secure the approval of the consulting engineer. In other words, the Authority could not exercise its discretion if the amount for acquisition of a right of way exceeded $5,000.00 unless such acquisition was approved by the consulting engineer.

Before concluding that "any contract or incurring any obligation exceeding * * * $5,000.00" is applicable to acquisition of right of ways, in my opinion, all of Sec.

702 of the Trust Agreement should be considered in connection with Sec. 657, supra.

There are two pertinent paragraphs in Sec. 702 of the Trust Agreement. The first paragraph is to the effect that the Authority covenants that it will forthwith proceed to acquire the right of way for the turnpike project and proceed to construct the same substantially as described in the engineering report and in accordance with plans and specifications which shall have been approved by the consulting engineer and in conformity with law.

If I correctly construe the above paragraph, the Authority covenants that it will forthwith proceed to acquire the. right of way for the turnpike project "in conformity with law" and to proceed to construct the same in accordance with plans and specifications which shall have been approved by the consulting engineer.

To acquire a right of way "in conformity with law" the Authority, under Title 69 O.S. 1961, Sec. 657, was empowered to exercise its discretion, and upon such terms and at such price as may be considered by it to be reasonable and can be agreed upon between the Authority and the owner. I am unable to find any provision in the Turnpike Act which empowers the Authority to contract away the authority specifically granted in Sec. 657, supra, or that empowers the consulting engineer veto powers over the acts of the Authority acting under the authority of such provision.

If we should construe the second paragraph of Sec. 702 of the Trust Agreement to be applicable to the acquisition of right of way, such construction would be in conflict with Title 69 O.S. 1961, Sec. 657. On the other hand, if we construe such paragraph to be applicable only to contracts and incurring obligations in the construction of the turnpike, such construction would not be in conflict with Sec. 657, supra.

The particular provision of the Trust Agreement was not specifically mentioned by the parties or considered in our opinion approving the Southwestern Turnpike Bond issue and the Trust Agreement. However,

it goes without saying, that no party to that proceeding contemplated or intended that any provision of the Trust Agreement would not be in harmony with all the provisions of the Turnpike Act or that this Court would ever place a construction on the Trust Agreement that would do so.

I respectfully dissent.

I am authorized to state that BLACKBIRD, HODGES and LAVENDER, JJ., concur in the views herein expressed.