Dear Commissioner Ward:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. May the Oklahoma State Shared Mediation Program, a part of the Oklahoma Merit Protection Commission's Alternative Dispute Resolution Program, be used to obtain approval of a settlement agreement between two parties when there is no dispute or conflict between the parties?
 2. Is a settlement reached through the Alternative Dispute Resolution Program enforceable when a state agency agrees to a salary increase it did not have the authority to grant without approval of the Office of Personnel Management?
The questions you ask stem from a situation where a state agency requested an equity-based salary adjustment above the midpoint of the pay band for several classified employees within the same job family in order to increase the salaries of those employees.[1]
The request was made to the Office of Personnel Management ("OPM") pursuant to 74 O.S.Supp. 2008, § 840-2.17 [74-840-2.17] and OPM administrative rule OAC 530:10-7-26. The Administrator of OPM denied the request to all employees.[2]
The employees for whom the increase was sought and an additional employee filed grievances with the state agency.[3]
Their grievances were denied by the agency based upon the fact that OPM had *Page 2 
disapproved the agency's request for the salary increases.[4] The agency made clear in denying the grievance that the agency was in favor of granting the salary increases but was limited by OPM's interpretation of its own rules.
One employee filed an appeal with the Oklahoma Merit Protection Commission challenging the salary adjustment action.[5]
That employee later dismissed the appeal and, along with several other employees, elected to participate in the Alternative Dispute Resolution Program.[6] Through the Oklahoma State Shared Mediation Program, a part of the Alternative Dispute Resolution Program, the employees and agency entered into a voluntary mediation agreement in which they agreed to the salary adjustment.[7] The settlement was approved by the Executive Director of the Merit Protection Commission. The settlement granted the salary increase to all employees for whom the agency had originally sought the increase.[8]
After the agreement was reached, OPM issued a Notice and Order of Administrative Hearing to the state agency notifying the agency that a hearing would be conducted to determine whether cause existed to issue an administrative order directing compliance with the Oklahoma Personnel Act and Merit System of Personnel Administrative Rules.[9] Several questions relating to the effect of the settlement agreement made through the Alternative Dispute Resolution Program have arisen from these actions. *Page 3 
 I. INTRODUCTION
The Oklahoma Personnel Act, 74 O.S. 2001 Supp. 2008, §§ 840-1.1 — 840-6.9, was enacted "to protect the public from improper use of authority, to protect public officials and employees from unwarranted assaults on their integrity and to enforce the protections for classified employees and citizens under the Merit System of Personnel Administration." 74 O.S. 2001, § 840-1.2[74-840-1.2]. It was also enacted "to provide policies and procedures for the selection, hiring, retention, advancement, career development, job classification, salary administration, discipline, discharge and other related activities, all in accordance with principles of merit and fitness and equal employment opportunity, and to maintain a high level of morale, motivation and productivity among state employees." Id. The Oklahoma Personnel Act abolished the Merit System Office and the State Personnel Board and transferred their duties to two new state agencies, the "Office of Personnel Management" and "Oklahoma Merit Protection Commission."Id. § 840-1.4(A). Both agencies have rulemaking authority and have responsibility for state employee personnel issues.Id. § 840-1.4(F). Each agency has general and specific duties provided by statute and by administrative rule. Id.
A. Duties of the Office of Personnel Management ("OPM")
The Administrator of OPM has general duties to provide a system of personnel administration for state employees. Specifically, the Administrator is to "[b]e responsible for the development of an efficient and effective system of personnel administration that meets the management needs of the various agencies[.]" 74 O.S.Supp. 2008, § 840-1.6A [74-840-1.6A](1). The Administrator is to "[p]repare, maintain, and revise a classified system of employment designed to assure the impartial consideration of applicants for employment and to protect state employees from arbitrary dismissal or unfair treatment[.]" Id. § 840-1.6A(3). The Administrator of OPM is also charged with "[a]ssist[ing] the Oklahoma Merit Protection Commission and the Executive Director in effectuating their duties, enforcement of the rules of the Merit System of Personnel Administration, and implementation of corrective action issued by the Commission[.]"Id. § 840-1.6A(15).[10]
The Administrator of OPM is empowered to "[a]dopt and implement rules necessary to perform [his or her] duties."Id. § 840-1.6A(14). Those rules are set forth in Title 530 of the Oklahoma Administrative Code. Generally, "[t]he Administrator may take whatever action is consistent with the rules in this Title to carry out the duties of the Administrator and accomplish the objectives of any program or activity within his or her authority." OAC 530:1-3-2 (1993). "The Administrator may use formal procedures or informal procedures, such as telephone calls, letters, meetings, mediation, investigations or other appropriate methods to resolve concerns." Id. Rule OAC 530:1-3-9(a) explains the procedures for conducting hearings and requires the Administrator to follow the *Page 4 
provisions of Article II of the Administrative Procedures Act, 75 O.S. 2001, §§ 309[75-309] — 323, in conducting hearings.
The Administrator has the authority to:
Issue orders directing agencies to:
 a. [C]omply with the provisions of the Oklahoma Personnel Act, the Merit Rules of Personnel Administration, and all memoranda or other written communications issued to agencies explaining the Oklahoma Personnel Act, the Rules, and any other matter relating to the Merit System of Personnel Administration or under the jurisdiction of the Administrator of the Office of Personnel Management[.]
74 O.S.Supp. 2008, § 840-1.6A[74-840-1.6A](20); see also OAC530:10-1-6(a) (2003). The Administrator may levy administrative fines to enforce those orders. 74 O.S. 2001, § 840-6.9[74-840-6.9](A); OAC 530:10-1-6(b).
The Administrator of OPM also has specific duties by statute and in Title 530 of the Administrative Code with regard to the compensation of state officials and employees. The Oklahoma Legislature has enacted a statute dealing with raises for state officers and employees at 74 O.S.Supp. 2008, § 840-2.17 [74-840-2.17]. That statute reads:
 A. Unless otherwise provided by the Oklahoma Constitution, language in law which authorizes the setting or fixing of compensation, pay or salary of state officers and employees shall not be construed to authorize any agency, board, commission, department, institution, bureau, executive officer or other entity of the executive branch of state government to award, grant, give, authorize, or promise any officer or employee of the State of Oklahoma a raise, including, but not limited to, a cost-of-living raise or any other type of raise that would be given to state employees on an across-the-board basis, except as herein provided. Such raises are prohibited unless authorized by the Legislature and by Merit System of Personnel Administration Rules promulgated by the Administrator. This prohibition applies to all classified and unclassified officers and employees in the executive branch of state government, excluding institutions under the administrative authority of the Oklahoma State Regents for Higher Education.
Id. (emphasis added). Subsection B of Section 840-2.17 contains a number of exceptions which permit raises to be given when authorized by the Legislature or administrative rules. These exceptions, including an exception for equity-based adjustments, are not prohibited:
 B. [I]f the action is made in good faith and not for the purpose of circumventing subsection A of this section, and if the appointing authority certifies that the *Page 5 
action can be implemented for the current fiscal year and the subsequent fiscal year without the need for additional funding to increase the personal services budget of the agency[.]
Id.
The reference to the Merit System of Personnel Administration Rules in subsection A is to OAC 530:10-7-26 which, at the time of the disputed salary increase, provided:
 An Appointing Authority may provide equity-based pay adjustments when individual employees are significantly underpaid relative to other employees performing the same or similar duties, or employees with the same role or accountabilities, in the same job family and level within the same agency. Adjustments above the midpoint of the pay band require approval of the Administrator. Adjustments below the midpoint of the pay band and which are consistent with the requirements of this section may be made at the Appointing Authority's discretion. An Appointing Authority may limit equity-based pay adjustments to employees rated at least "Meets Standards" on the most recent performance evaluation. Such limitation must be included in the agency's approved Salary Administration Plan. No employee may receive more than one equity-based adjustment in the same job family and level in a twelve-month period.[11]
Id. (emphasis added) (footnote added). That rule requires the Administrator of OPM to approve adjustments above the midpoint of the pay band.[12]
B. Duties of the Oklahoma Merit Protection Commission
The other agency created to ensure compliance with the Oklahoma Personnel Act, the Merit Protection Commission, is mandated to, among other things:
 1. Receive and act on complaints, counsel persons and groups on their rights and duties and take action designed to obtain voluntary compliance with the provisions of the Oklahoma Personnel Act; *Page 6 
 2. Investigate allegations of violations of the provisions of the Oklahoma Personnel Act within its jurisdiction;
 3. Investigate allegations of abuses in the employment practices of the Administrator of the Office of Personnel Management or of any state agency;
 4. Investigate allegations of violations of the rules of the Merit System of Personnel Administration and prohibited activities in the classified service;
 5. Establish and maintain a statewide Alternative Dispute Resolution Program to provide dispute resolution services for state agencies and employees.
74 O.S.Supp. 2008, § 840-1.9 [74-840-1.9].[13]
"The appointing authority of the Oklahoma Merit Protection Commission shall be the Executive Director" who is "appointed by the Commission." 74 O.S. 2001, § 840-1.8[74-840-1.8].
The Merit Protection Commission is required by statute to establish and maintain an Alternative Dispute Resolution Program and to promulgate rules for the implementation and management of the program. Id. § 840-6.1(A).
 II. THE OKLAHOMA STATE SHARED MEDIATION PROGRAM, A PART OF THE OKLAHOMA MERIT PROTECTION COMMISSION'SALTERNATIVE DISPUTE RESOLUTION PROGRAM, MAY NOT BE USED TOOBTAIN APPROVAL OF A SETTLEMENT AGREEMENT BETWEEN TWO PARTIES WHEN THERE IS NO DISPUTE OR CONFLICT BETWEEN THE PARTIES.
The Legislature charged the Oklahoma Merit Protection Commission with establishing and maintaining an Alternative Dispute Resolution Program and required the Commission to adopt rules for implementation of the program. 74 O.S. 2001, § 840-6.1[74-840-6.1](A). The Legislature gave little guidance as to the parameters of the program but stated a purpose was "to provide an economical means and access to effective alternative dispute resolution services to all state agencies and employees." Id. § 840-6.1(B). The Legislature provided that decisions in cases from the program "may be appealed by any party to the Oklahoma Merit Protection Commission and thereafter to district court." Id. § 840-6.1(D).
Pursuant to this legislative mandate, the Oklahoma Merit Protection Commission adopted and promulgated rules defining the purpose, use and scope of *Page 7 
the Alternative Dispute Resolution Program. See OAC455:10-17-1 — 10-17-8. OAC 455:10-17-1 generally sets forth the parameters of the Alternative Dispute Resolution Program, describing the program as "an alternate means to resolve appeals, disputes and conflicts." OAC 455:10-17-1(b) (2002).
The advantages of the program are listed at OAC 455:10-17-2, and include the expertise of a neutral facilitator, the opportunity for a "day in court" and direct involvement of the parties. The rules explain the advantage of a neutral facilitator is that the "facilitator has hands-on experience on the issues in dispute and has been trained by the Commission." OAC 455:10-17-2(2). "The facilitator can get to and address the issues in dispute without legal perspectives." Id. The opportunity for a "day in court" is important as it "affords the parties an opportunity to tell their side of the dispute." OAC 455:10-17-2(4). With regard to direct involvement, the rule states:
 (5) Direct involvement. ADR allows agency supervisors and managers to become involved more quickly in settling disputes. Often the dispute is between employees, supervisors and managers who have an ongoing working relationship. The preservation of this relationship is beneficial to everyone and an early resolution of the dispute is highly desirable.
Id. Each of these advantages highlights the fact that the dispute resolution program is to be used when there is a dispute or conflict between the parties.
The specific rule applicable to situations where individuals seek mediation assistance from the Merit Protection Commission without the filing of an appeal is OAC 455:10-17-8, governing the Oklahoma State Shared Mediation Program ("OSSMP"). As stated in the rule, the OSSMP "is a project of the Commission to provide mediation as an alternative means to resolve disputes in the state workplace." OAC455:10-17-8(a). That rule provides:
 The purpose of the OSSMP is to resolve disputes at the earliest possible time to increase the quality of communication with the workforce, to maintain a productive work environment and to reduce the costs and time involved with formal processes. The Commission will establish guidelines for use of the OSSMP. The OSSMP provides an opportunity for agencies and employees to voluntarily settle appeals, grievances and other employment disputes and conflicts. It is not necessary for a petition for appeal or internal agency grievance to be filed before requesting or using the OSSMP.
 Id. (emphasis added). Under this rule, when a request for mediation is made, the Merit Protection Commission is to conduct an intake interview to determine if:
 (A) the matter in dispute or conflict is appropriate for mediation;
 (B) the persons involved in the dispute or conflict are correctly identified;
 (C) the persons involved in the dispute or conflict are willing to mediate; and *Page 8 
 (D) any person involved in the dispute or conflict will have a representative in attendance at the session.
OAC 455:10-17-8(h) (emphasis added).
The Executive Director reviews the recommendation of the person conducting the intake and accepts or rejects the request. OAC455:10-17-8(h)(2). If rejected, the person making the request and the persons involved in the dispute or conflict "shall be contacted and notified." OAC 455:10-17-8(h)(2)(A). "If accepted, the Executive Director shall assign a mediator." OAC 455:10-17-8 (h)(2)(B).
The mediation session is "informal, structured by the mediator and not open to the public." OAC 455:10-17-8(i). "If an agreement is reached, it shall be reduced to writing and signed by each participant and the mediator." OAC 455:10-17-8(j). The agreement is reviewed and approved by the Executive Director before it becomes final. Id. In this context, the Executive Director does not serve as a hearing officer but simply approves the agreement reached between the parties
A review of these rules governing the OSSMP makes it abundantly clear that the OSSMP operates to resolve disputes or conflicts between the parties. Under the facts you present, the agency and the employees were in agreement in seeking a salary adjustment for the employees. The employees desired the increase and the agency was in favor of the increase. There was no dispute or conflict between the parties. The pay adjustment required approval from OPM. The agency acknowledged this by seeking permission from OPM for the salary increase pursuant to 74 O.S.Supp. 2008, § 840-2.17 [74-840-2.17] and OAC 530:10-7-26. That approval was denied by OPM. The dispute that existed was between the agency and OPM, not between the agency and its employees. OPM was not a party to the mediation proceedings filed before the Merit Protection Commission and had no opportunity to participate in the dispute resolution proceedings.[14] Under these facts, there was no dispute or conflict between the parties to the settlement agreement.
The meaning of the term "settlement" also supports our conclusion that use of the OSSMP requires a dispute or conflict between the parties. The Oklahoma Supreme Court has defined a "settlement agreement" as "a contract which constitutes a compromise between two or more parties to avoid a lawsuit and amicably to settle their differences on such terms as they can agree." Whitehorse v.Johnson, 156 P.3d 41, 46 (Okla. 2007) (footnote omitted). Here, there was no compromise between the two parties as they had no differences to settle. The employees and the agency used the Alternative Dispute Resolution Program to essentially "rubber stamp" an agreement made by them. *Page 9 
As there was no dispute or conflict between the parties, the OSSMP of the Alternative Dispute Resolution Program was not properly used to obtain settlement approval.
We conclude, therefore, that parties may not use the Alternative Dispute Resolution Program, specifically the OSSMP, to approve a settlement when there is no dispute or conflict between the parties.[15] Approval of such a settlement by the Executive Director of the Merit Protection Commission does not validate an otherwise invalid settlement agreement.
 III. A STATE AGENCY IS WITHOUT AUTHORITY TO SETTLE A MATTER THROUGH THE ALTERNATIVE DISPUTE RESOLUTION PROGRAM WHEN THE SUBJECT MATTER IS AN EQUITY-BASED PAY ADJUSTMENT ABOVE THE MIDPOINT OF THE PAY BAND WHICH REQUIRES APPROVAL OF THE OFFICE OF PERSONNEL MANAGEMENT.
Even if the facts you present were proper for settlement through the Alternative Dispute Resolution Program, the settlement would not be enforceable as the agency did not possess the legal authority to agree to the terms of the settlement. In similar contexts courts have held that settlements which are made without authorization are not enforceable. In Ray v. Oklahoma Turnpike Authority,418 P.2d 957, 961 (Okla. 1966), an attorney had the authority to negotiate on behalf of the Oklahoma Turnpike Authority with property owners for acquisition of their property, but did not have the power to bind the Authority with respect to payment in excess of $5,000.00. For amounts over $5,000.00, the attorney was required "to follow [an] administrative procedure in getting the transaction approved." The court found that since approval was not given, neither party to the agreement was bound and the agreement was of no effect. Id. at 960. Ray is akin to the situation present here as the agency did not have the authority to agree to a salary increase which required the approval of OPM. See id.;see also Hays v. Monticello Ret. Estates, L.L.C.,192 P.3d 1279, 1282 (Okla. Civ. App. 2008) (holding a contract made by an attorney who has no authority to compromise or settle a matter is made without authority of law and is void).
Oklahoma law requires approval by OPM for equity-based salary increases above the midpoint range of the pay band. A state agency does not have the authority to agree to a salary increase which has been disapproved by OPM. Without OPM's approval, the salary increase could not legally be granted.
Approval of the agreement by the Executive Director of the Merit Protection Commission did not validate the otherwise illegal settlement. In Isenhower v. Isenhower,666 P.2d 238, 241 (Okla. Civ. App. 1983), *Page 10 
a defendant claimed a void contract which was part of a divorce decree was validated once it was incorporated into a judgment. The court disagreed, stating:
 If the contract, however, is void and a nullity by statute, it continues to be so once incorporated in the divorce decree with the result that the judgment as it pertains to such contract is also void. This is true because the trial court is without power or jurisdiction to render a judgment based upon a statutorily void contract.
Id. Under this same reasoning, the settlement agreement approving the granting of a salary increase to certain classified employees without OPM approval is not enforceable.[16] *Page 11 
 It is, therefore, the official Opinion of the Attorney Generalthat:
 1. The Administrator of the Office of Personnel Management must approve an equity-based pay adjustment for a state employee when the adjustment is above the midpoint of the pay band. 74 O.S. Supp. 2008, § 840-2.17[74-840-2.17]; OAC 530:10-7-26 (2004).[17]
 2. The Legislature charged the Oklahoma Merit Protection Commission with establishing and maintaining an Alternative Dispute Resolution Program. 74 O.S. 2001, § 840.6.1[74-840.6.1](A). The Oklahoma Merit Protection Commission adopted and promulgated rules defining the purpose, use and scope of the Alternative Dispute Resolution Program. See OAC 455:10-17-1 — 10-17-8. The rules describe the program as "an alternate means to resolve appeals, disputes and conflicts." OAC 455:10-17-1(b) (2002).
 3. The Oklahoma State Shared Mediation Program was established as part of the Alternative Dispute Resolution Program as a means to resolve disputes in the workplace. OAC 455:10-17-8 (2002). The Oklahoma State Shared Mediation Program may not be used to approve a settlement when there is no dispute or conflict between the parties. See generally id.
 4. A settlement by a state agency and a state employee for a pay adjustment above the midpoint of the pay band is not enforceable, as a state agency is without authority to agree to such a salary increase without the approval of the Office of Personnel Management. See Ray v. Okla. Turnpike Auth., 418 P.2d 957, 961 (Okla. 1966).
W.A. DREW EDMONDSON OKLAHOMA ATTORNEY GENERAL
SANDRA D. RINEHART SENIOR ASSISTANT ATTORNEY GENERAL
[1] See memorandum from Wellon B. Poe, Chief Legal Counsel, Dep't of Pub. Safety, to Sandy Rinehart, Senior Assistant Attorney General, Okla. Attorney General Office, p. 2 (June 27, 2009) (on file with author).
[2] Id.
[3] See letter from Oscar B. Jackson, Jr., Adm'r Cabinet Sec'y, Human Res. Admin., Office of Pers. Mgmt., to Sandy Rinehart, Senior Assistant Attorney General, Okla. Attorney General Office p. 2 ¶¶ 4, 5 (June 24, 2009) (on file with author) (stating the request for approval was above the midpoint and was denied pursuant to OAC 530:10-7-26, because it did not include all employees within the same role or accountabilities).
[4] Id.
[5] Id. p. 2, ¶ 6.
[6] See footnote 1, p. 2.
[7] See id. pp. 2, 3.
[8] See footnote 1, p. 2.
[9] See footnote 2, p. 2, ¶ 13.
[10] "The Merit System of Personnel Administration Rules . . . are also known as the Merit Rules for Employment and the Merit Rules." OAC 530:10-1-1(a) (1995). These rules are in Chapter 530 of the Oklahoma Administrative Code adopted by OPM and in Chapter 455 adopted by the Merit Protection Commission. OAC 530:10-1-1(c); OAC 455:10-1-2 (2009) (defining "Merit Rules" or "Merit Rules for Employment").
[11] This rule, OAC 530:10-7-26, has since been amended to remove the word "individual" in the first sentence and to include a requirement that "[a]ll eligible employees of an agency in jobs affected by an equity-based adjustment shall be given uniform treatment." See 26 Okla. Reg. 1091 (May 1, 2009) (eff. July 11, 2009).
[12] The state agency disagrees with OPM's interpretation of this rule. See footnote 2, p. 2, ¶ 3. OPM interprets the rule to require that the salary increase include all employees within the same job family level throughout the agency. Id. ¶ 2. The state agency interprets the rule to require that those within the same job family level who are doing the same work receive equal pay.See footnote 1, p. 2. Regardless of this dispute, the statute and the administrative rule require OPM's approval of salary increases above the midpoint of the pay band and there is no dispute that the requested salary increases are above the midpoint in this case.
[13] In 2009, the Oklahoma Legislature amended 74 O.S.Supp. 2008, § 840-1.9 [74-840-1.9](5) to require that "[a]ctions agreed to through the Alternative Dispute Resolution Program provided by the Commission shall be consistent with applicable laws and rules and shall not alter, reduce, or modify any existing right or authority as provided by statute or rule[.]" See
2009 Okla. Sess. Laws ch. 12, § 2. This amendment was not in effect at the time the situation occurred which gave rise to your questions.
[14] Merit Protection Commission rule, OAC 455:10-3-4.1, gives the Executive Director authority when an appeal is filed to "order a person or agency added as a party of record." OAC455:10-21-6 specifically governs intervening in appeals before the Merit Protection Commission. Subsection 3 allows the Administrator of the OPM to "personally intervene at the earliest possible time he or she knew, or should have known, that the issues in the appeal would directly affect the authority or responsibility of the Office of Personnel Management." However, as the situation which gave rise to your questions was not an appeal, these rules are inapplicable to your situation.
[15] Because we have determined that the Merit Protection Commission was without authority to approve the settlement, we need not answer the other questions you have asked in your Opinion request.
[16] See footnote 13.
[17] See footnote 11. *Page 1